(Decided 7th March, 1876.)

---

## The Cumberland and Pennsylvania Rail Road Company *vs.* The State, use of Michael Moran.

*Rail Road Company—Negligence—Injury to Employé—Evidence legally sufficient to go to the jury—Master and Servant—Fellow-Servant—Questions for the Jury.*

In an action against a Rail Road Company, to recover damages for the death of an employé, who was killed by the explosion of a locomotive engine belonging to the defendant, while employed thereon as fireman, it was shown on the part of the plaintiff that the engine had been purchased in 1869 as a second class engine, then out of use, and that the agents of the defendant, entrusted with the power of making the purchase failed to ascertain the age of the engine, the use to which it had been subjected, or its condition further than by an examination of its appearance as then presented. It was proved that at the time of the explosion, resulting in the death in question, the engine was in a very defective condition, that its dome was cracked, and the plates of iron of which the boiler was composed had from some cause lost their tenacity and power to resist an ordinary pressure of steam, and that the defective condition of the engine had been brought to the knowledge and attention of the employés of the defendant whose business it was to repair it. Held :

1st. That upon this proof there was evidence legally sufficient upon which the Court below was justified in submitting the case to the jury, although on the

284      MARYLAND REPORTS.

The Cumb. & Penna. R. R. Co. *vs.* State, use of Moran.

part of the defendant it was proved that every precaution was taken, and that the engine was repaired, and was supposed to be in a good, safe condition.

2nd. That it was for the jury to determine upon the real state of the facts as they found them to exist, whether there was negligence on the part of the defendant.

When a servant engages for the performance of services for compensation, it is implied in the contract as between himself and the employer, unless otherwise stipulated, that he takes upon himself all the natural risks and perils incident to the service.

Where the nature of the service is such that as a natural incident to that service, the servant must be exposed to the risk of injury from the negligence of other servants of the same employer, or from the use of dangerous machinery, such risk is among the natural perils which the servant assumes upon himself, as between himself and his master; and consequently there is no liability of the latter to the former for injuries resulting from the negligence of other servants in the same common employment, or the use of such machinery.

If however the master has wrongfully and unjustifiably enhanced the risk to which the servant is exposed, beyond the natural risk of the employment, which must be presumed to have been in contemplation when the employment was accepted, as by knowingly or negligently employing incompetent or unfit servants, or supplying defective machinery—in such cases, the master may be held liable for the consequences of such negligence.

The danger contemplated on entering into the contract must not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract or the nature of the employment, the servant had a right to expect that it would be kept. In the case as above stated, it was further HELD :

1st. That as the general superintendent, assisted by the master of machinery, made the purchase of the locomotive engine in question, they must be taken as the representatives of the defendant, and any omission or neglect committed by them must be regarded as that of the defendant and for which it is liable.

2nd. That these agents thus entrusted with the duty of purchasing the engine are not to be regarded as fellow-servants of those operating it.

3rd. That it does not follow however, because the master of machinery acted in a distinct and special employment in making the selection of the engine, that therefore he was not a fellow-servant with those operating it, in his ordinary employment as master of machinery.

The Cumb. & Penna. R. R. Co. *vs.* State, use of Moran.

4th. That whether he be regarded as fellow-servant or as holding a representative position, if he was unskilful and incompetent for the position he occupied, to the knowledge of the defendant, the latter would be liable for any injury that resulted from his incompetency or want of skill.

5th. That it was the duty of the defendant to keep the engine in such proper repair as not to increase the risk that was contemplated by the servant at the time he entered the service, and if by reason of the want of skill, or from other incompetency of the master of machinery that duty was not discharged, the defendant would be liable for the consequences.

6th. That whether the master of machinery was unskilful or otherwise incompetent for his position, or whether the injury sued for was in any manner the result of his unskilfulness or other incompetency, and not of the want of care on the part of the deceased were questions for the jury to determine upon the facts of the case.

APPEAL from the Circuit Court for Allegany County.

The facts are sufficiently stated in the opinion of the Court.

*Exception.*—At the trial below the plaintiff offered the six following prayers :

1. That if the jury shall find from the evidence that the defendant owned and worked a railroad from Cumberland, Md., to Westernport, Md., during the year 1874, and that Thomas Moran, a minor child of the equitable plaintiff, was employed by the defendant as fireman on one of its engines on said road in the month of May, in said year, and that during said month the said engine blew up or exploded, and that by said explosion the said Thomas was killed, whilst exercising due care and diligence on his part ; and if they shall further find, that at the time of such explosion said engine was unsound and unsafe, and that ordinary care had not been used by the defendant in procuring a sound and safe engine instead of such unsound and unsafe one, then the plaintiff is entitled to recover and the jury may award such damages as they may think proportioned to the injury, resulting from such death, to the father of said deceased, for whose benefit this action is

'brought. But in estimating the damages, they are to be confined to the value of the service of the son to his father from the time of his death until his arrival at the age of twenty-one years.

2. If the jury shall believe from the evidence that the defendant did not use reasonable care in procuring sound machinery, or in selecting faithful and competent employés in its shops, and that it was by reason of such failure that Thomas Moran, the minor child of Michael Moran, the equitable plaintiff, was killed by the explosion of a locomotive boiler, the property of the defendant, on or about the 5th of May, 1874, while employed thereon as a fireman and while in the discharge of his duty as said fireman, and that said Thomas Moran was not aware of the true condition of said boiler at any time prior to said explosion, and that said Thomas Moran at the time of said explosion was using ordinary care in and about his said employment, then the plaintiff is entitled to recover in this action.

3. If the jury believe from the evidence that Michael Moran, the equitable plaintiff, was the father of Thomas Moran, that the said Thomas while yet a minor, came to his death from the explosion of a defective engine, the property of the defendant, on which he was employed as a fireman, that such defectiveness, if the same existed, was known to the defendant or to its agents for a considerable time prior to said explosion, but that no attention was paid thereto nor any steps taken towards remedying such defectiveness by the said defendant or its agents, that the decedent, Moran, was not aware of such defectiveness and was at the time of said explosion exercising ordinary care and prudence in and about his said employment as fireman, then the plaintiff is entitled to recover. "But the jury cannot charge the defendant with the negligence of any of its employés, unless they shall find from the evidence in the cause, that the defendant did not use reasonable care in the selection of and retaining of such employés."

## OCTOBER TERM, 1875.    287

The Cumb. & Penna. R. R. Co. *vs.* State, use of Moran.

4. If the jury believe from the evidence that engine No. 22, on the road of the defendant, exploded and killed Thomas Moran, the fireman thereon, that said Moran was at the time of his death but about nineteen years of age, and was the son of the equitable plaintiff, that said explosion occurred on or about the 5th of May, 1874, and was occasioned by the defective and worn out condition of the boiler of said engine, that such defective and worn out condition was known to the defendant, and that the defendant did not use reasonable care in procuring said engine or in repairing the same after such knowledge of its defectiveness, or in procuring faithful and competent co-employés of said Moran, whose duty it was to keep said engine in good condition and repair, (if they find it exploded for the want of such repairs,) and that said Moran did not contribute to said explosion by any want of care or prudence on his part, and did not know of the defective or dangerous condition of said engine during or prior to his said employment thereon, then the plaintiff is entitled to recover.

5. If the jury find the killing of Thomas Moran as stated in the first prayer, and that such killing was caused by the unsafe and unsound condition of the engine, and that such unsafe and unsound condition was known to the defendant for a sufficient length of time before the accident to have enabled the defendant by the use of ordinary diligence to have avoided the accident, or might have been so known to it or its general managers by the use of due diligence on their part (provided they find that the defendant did not use reasonable care in the selection of such managers) then the plaintiff is entitled to recover, provided they shall further believe that at the time of said accident said Moran was using due care on his part and was not aware of the unsound condition of said engine.

6. If the jury shall believe that the said killing was the result of the negligence of Wm. L. Jordan, and that at the time of said accident said Jordan was defendant's mas-

ter of machinery, and that he was vested by the defendant with power to employ and dismiss men under him at his pleasure, then the defendant is liable for the negligence of said Jordan, and the plaintiff is entitled to recover.

And the defendant offered nine prayers as follows :

1. That if the jury, find from the evidence in the cause that Joseph McCune was employed by it as boiler maker, and that his duty was to examine the boiler in controversy, and to see that it was in good and safe condition, and that the defendant used reasonable care in employing said McCune and keeping him in its employ, and that the injury complained of was caused by the negligence of said McCune in permitting the boiler in controversy to be used in an unsafe and insufficient condition, then the plaintiff cannot recover.

2. That if the jury find from the evidence in the cause, that Thomas Hogan was the engineer in charge of the engine in controversy, in the employ of the defendant at the time of the injury complained of, and that the injury was caused by the carelessness or negligence of said Hogan, and that the defendant used reasonable care in employing said Hogan, and retaining him in its employ, then the plaintiff cannot recover.

3. That the burden of proof is upon the plaintiff to show by a preponderance of testimony that the injury complained of was caused by the want of reasonable and ordinary care on the part of the defendant in the employment and retention of the agents whose duty it was to provide and keep in order the boiler in controversy in this cause, and that there is no evidence sufficient to show such want of care, and therefore the plaintiff cannot recover.

4. That there is no sufficient evidence in the cause to show that the defendant was negligent in the employment of or retaining said McCune or said Hogan in its employ.

5. That even should the jury find a verdict for the plaintiff, in assessing the damages, they are not to take into

consideration the mental pain and suffering of Michael Moran, the equitable plaintiff, in consequence of the death of his son, and are not to give against the defendant, punitive, vindictive or exemplary damages ; but in estimating the damages, they are confined to the pecuniary damage sustained by the plaintiff, and are to give to him such a sum as they may believe, from all of the evidence in the case, will be an adequate compensation for the loss of his son's services from the time of his death to the period when, if he had lived, he would have attained the age of twenty-one years.

6. If the jury believe from the evidence, that the son of the equitable plaintiff, at the time he met with his death, was fireman in the employ of the defendant, and was acting as such, and that his death occurred by the explosion of engine No. 22, on which he was fireman, and that said explosion occurred by means of negligence of other servants of the defendant, in selecting or purchasing said engine, whose duty it was to have seen that none but good · engines were put in the service or used by the defendant ; yet the plaintiff cannot recover, unless he shall satisfy the jury, that in selecting the employés or servants through whose negligence such selection was made, and continuing them in its employ—the accident occurred, the defendant did not use reasonable care in procuring and retaining for its operations faithful and competent employés ; and further, that in this case the plaintiff has offered no evidence from which the jury may find that the defendant did not use such care in the selection and retention of their said employés.

7. And if the jury shall believe from the evidence that the happening of the accident, whereby the son of the plaintiff was killed, was caused by the defective condition of the engine ; yet the plaintiff cannot recover, unless he shall satisfy the jury, from the evidence, that the defendant did not use reasonable care in procuring for its use sound

machinery ; and further, that in this case, the plaintiff has offered no evidence to show that such reasonable care was not used by the defendant.

8. That there is no sufficient evidence in the cause to prove that the injury complained of was caused by any want of capacity or want of care in either William L. Jordan or Harrison D. Lowery.

9. And also that there is no sufficient evidence to prove that the defendant was negligent in the employment of Harrison D. Lowery, Bothwell or J. H. Strain.

The Court, (PEARRE and MOTTER, J.,) granted the plaintiff's first, second, third, fourth and fifth prayers, and rejected his sixth prayer, and granted the defendant's first, second, fourth, fifth and ninth prayers, and rejected its third, sixth, seventh and eighth prayers.

The defendant excepted. The jury rendered a verdict for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER, ALVEY and ROBINSON, J.

*Robert H. Gordon,* and *J. H. Gordon,* for the appellant.

*Wm. Bruce, Jr.,* and *Henry W. Hoffman,* for the appellee.

ALVEY, J., delivered the opinion of the Court.

This action was brought by the father to recover for the death of his son caused by the explosion of a locomotive engine on the road of the defendant, while the son was employed as fireman on such engine. The objection to the plaintiff's right to recover is mainly founded in the supposed want of evidence to establish the existence of negligence on the part of the defendant, in providing the engine, and in the employment of workmen to superintend and keep such engine in proper repair.

We shall not undertake to recapitulate the evidence, nor to show what weight was due to any particular part of it; our power in this respect being simply to ascertain whether there was evidence *legally* sufficient upon which the Court below was justified in submitting the case to the jury. To this latter tribunal belonged the power and duty of passing upon the credit of witnesses, and of comparing and weighing the evidence introduced by the respective parties, and deducing therefrom conclusions as to the facts put in issue by the pleadings. With those conclusions we have nothing to do, provided there was some evidence legally sufficient for the consideration of the jury in determining the questions raised. The power was with the Court below to grant a new trial, and if the verdict was against the decided weight of evidence, as has been argued by the counsel for the defendant, it is but fair to presume that a new trial would have been granted if it had been applied for.

Upon examination of the record, we think there was evidence to go to the jury upon the questions in controversy; and hence the Court below committed no error in rejecting the third, sixth, seventh and eighth prayers of the defendant. It was shown, on the part of the plaintiff, that the engine No. 22 had been purchased in 1869, as a second-hand engine, then out of use; and that the agents of the defendant, entrusted with the power of making the purchase, failed to ascertain the age of the engine, the use to which it had been subjected, or its condition, further than by an examination of its external appearance as then presented. It was proved that, at the time of the explosion, resulting in the death of the plaintiff's son, the engine was in a very defective condition; that its dome was cracked, and the plates of iron of which the boiler was composed had, from some cause, lost their tenacity and power to resist an ordinary pressure of steam; and that the defective condition of the engine had been brought to

the knowledge and attention of the employés of the defendant, whose business it was to repair the engine.

It is true, that, on the part of the defendant, it was proved that every precaution was taken, and that the engine was repaired, and was supposed to be in a good, safe condition; but, as we have said, it was for the jury to determine, upon the real state of the facts, as they found them to exist, whether there was negligence on the part of the defendant.

As to the law of the case, that would seem to be well settled. When a servant engages for the performance of services for compensation, it is implied in the contract, as between himself and the employer, unless otherwise stipulated, that he takes upon himself all the natural risks and perils incident to the service. In such case, the presumption of law is, that the risks are considered in adjusting the amount of compensation for the services to be rendered. Where the nature of the service is such that, as a natural incident to that service, the servant must be exposed to the risk of injury from the negligence of other servants of the same employer, or from the use of dangerous machinery, such risk is among the natural perils which the servant assumes upon himself, as between himself and the master; and consequently there is no liability of the latter to the former for injuries resulting from the negligence of other servants or co-employés in the same common employment, or the use of such machinery. If, however, the master has wrongfully and unjustifiably enhanced the risk to which the servant is exposed beyond the natural risk of the employment, which must be presumed to have been in contemplation when the employment was accepted, as by knowingly or negligently employing incompetent or unfit servants, or supplying defective machinery,— in such cases, the master may be held liable for the consequences of such negligence. *Morgan vs. The Vale of Neath R. Co.*, 5 *B. & S.*, 570; affirmed in the *Ex. Ch.*

*L. R.*, 1 *Q. B.*, 145 ; *Wonder vs. Balto. & Ohio. R. Co.*, 32 *Md.*, 411.

The rule upon this subject is well stated by Chief Justice COCKBURN, in the case of *Clarke vs. Holmes*, 7 *H. & N.*, 943. He there said : "Where a servant is employed on machinery from the use of which danger may arise, it is the duty of the master to take due care, and to use all reasonable means, to guard against and prevent any defects from which increased and unnecessary danger may occur. No doubt, when a servant enters on an employment from its nature necessarily hazardous, he accepts the service subject to the risks incidental to it ; or, if he thinks proper to accept an employment on machinery defective from its construction, or from the want of proper repair, and with knowledge of the facts enters on the service, the master cannot be held liable for injury to the servant within the scope of the danger which both the contracting parties contemplated as incidental to the employment. The rule I am laying down goes only to this, that the danger contemplated on entering into the contract, shall not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract or the nature of the employment, the servant had a right to expect that it would be kept." There are many cases maintaining the same general proposition, and the law may be regarded as settled in accordance with the opinion just quoted.

In this case, the purchase of the engine was made by Slack, the general superintendent of the defendant, assisted by Jordan, the master of machinery. Now, as it was the duty of the defendant to supply, as far it could be done by the exercise of due and proper care, safe and sound machinery, the persons authorized to make the selection of and purchase the engine, must be taken as the representatives of the defendant ; and any omission or neglect committed by them, must be regarded as that of

the defendant, and for which it is liable. These agents, therefore, thus entrusted with the duty of purchasing the engine, are not to be regarded as fellow-servants of those operating it; for, in respect to the selection and purchase of the engine, they acted as agents representing the principal in regard to matters for which the latter might be liable to its servants; and hence the defendant's sixth prayer was properly rejected by the Court below. .

It does not follow, however, that because Jordan acted in a distinct and special employment, in making the selection of the engine, that therefore he was not a fellow-servant with those operating it, in his ordinary employment as master of machinery. Whether he was a fellow-servant of the deceased or not, we need not now decide; for whether he be regarded as fellow-servant, or as holding a representative position, if he was unskilful and incompetent for the position he occupied, to the knowledge of the defendant, the latter would be liable for any injury that resulted from his incompetency or want of skill. It was the duty of the defendant to keep the engine in such proper repair as not to increase the risk that was contemplated by the servant at the time he entered the service; and if by reason of the want of skill, or from other incompetency of the master of machinery, that duty was not discharged, the defendant would be liable for the consequences. Whether Jordan was unskilful or otherwise incompetent for his position, and whether the injury sued for was in any manner the result of his unskilfulness or other incompetency, and not the want of care on the part of the deceased, were questions for the jury to determine upon all the facts of the case; and the Court below properly submitted those questions to the jury.

The instructions on the part of the plaintiff were loosely and defectively drawn, and if the case had to be disposed of upon those instructions, without anything more, we should be compelled to reverse the judgment, for error in

Lyon & Scott *vs.* George.

granting them. But the Court appended, a qualification to the third prayer, which applied to all that were granted on the part of the plaintiff; and when the instructions thus qualified are read in connection with the five prayers granted on the part of the defendant, we think the jury were fully and correctly instructed as to the law of the case. At any rate, there is no such error apparent as to justify the reversal of the judgment, and we must therefore affirm it.

*Judgment affirmed.*

(Decided 7th March, 1876.)

