# THE MARYLAND CLAY COMPANY *vs.* EDWARD GOODNOW.

*Negligence of Fellow Servant—Injury Caused by Collision of Cars on a Trestle—Absence of Bumper.*

The defendant company operated a railway for the purpose of carrying clay from the pits where dug to the works where it was refined. The railway crossed another road upon a trestle and the clay was unloaded from the cars at a point near which there was a slight incline in the trestle. Plaintiff, a laborer in defendant's service, was engaged in unloading the clay from one of four cars which were standing at the end of the trestle when other cars of the defendant became detached from the engine, ran down the track and crashed into the standing cars. Plaintiff was thrown out upon the trestle and the car next to the one from which he was thrown passed over his arm and one of the standing cars was pushed over the end of the trestle. In an action to recover damages plaintiff's evidence showed that there were no brakes on the cars which caused the collision and that there was no bumper at the end of the trestle but only a crosstie. The defendant's evidence showed that it had provided other cars with brakes. The trestle was built under the direction of defendant's superintendent. *Held,*

1st. That plaintiff's injury was caused by the negligence of his fellow servants in using cars without brakes when cars with brakes were at hand and he is consequently not entitled to recover since an employee assumes the risk of the negligence of his fellow servants.

2nd. That if the injury was also caused in part by the absence of a bumper at the end of the trestle, that was the result of the negligence of the superintendent who constructed it, and there is no evidence in the case to show that the superintendent was a vice principal or not a fellow servant with the plaintiff.

Appeal from the Circuit Court for Harford County (WATTERS, J.) The plaintiff obtained a judgment on verdict for $10,000.

*Plaintiff's 1st Prayer.*—If the jury believe that the plaintiff was in the service of the defendant company as a laborer, as stated in the declaration, then it was the company's duty to exercise reasonable care to provide a reasonably safe place for him to perform the services for which he was employed; and

if by the negligence of the company to perform this duty, the plaintiff while in the exercise of reasonable care on his part, was injured, then he is entitled to recover, unless the jury shall further find that the plaintiff knew, or by the exercise of reasonable care on his part, would have known, of the dangerous condition of the place by reason of said negligence upon the company's part. (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, PEARCE, SCHMUCKER and JONES, JJ.

*John S. Wirt* and *Richard S. Culbreth,* for the appellant.

The cause of the accident was unquestionably the broken brake on one of the cars of the dirt train, and the substitution for it of small blocks of wood picked up at random. If the dirt train had been securely held on the incline, the accident would not and could not have happened. The trestle, where the plaintiff was engaged, was level. The plaintiff testified that the grade in the 300 feet was six feet, and that the rest of the track was practically level to the end of the trestle, "and that the cars on the 18th, 19th and 20th of April had never moved while the men were unloading them, and when he and the other men had wanted to move the cars at that point they had to use a crowbar to do it."

Thus force, and considerable force, was required to move the cars at the end of the trestle. This force was supplied by the dirt train, which ran down the incline by gravity, and, with the momentum thus acquired, passed along the level part of the track and struck them. The dirt train started down the incline by reason of the fact that when one of the cars composing it was dumped, the jar dislodged the blocks and the one good brake was insufficient to hold it. The fact that the accident was not at all due to the absence of a bumper on the end of the trestle at the point where work thereon had been temporarily suspended, is one that can be easily demonstrated. Assume the fact to be that according to the original plan, which was subsequently carried out, the trestle had been

extended beyond the sheds toward the river, and a good bumper had been placed at the end of it. The accident would have happened precisely as it did happen. The end cars, instead of going over the end of the trestle, would have continued *in motion* on it ; the shock of the collision of the dirt train with them could have no less ; the plaintiff would have been thrown to the track, and the car next to the one on which he was engaged would have passed over his arm.

A bumper at the end of the trestle, as far as it extended on the day of the accident, could have been no protection against the accident, except under one condition of circumstances, which was least likely to exist, that condition being one in which the end car was against the bumper. In that case, if the bumper could have resisted the shock, it may be that the car next to the one on which the plaintiff was at work would not have passed over his arm. But even in that case, it is more than likely that the rebound would have caused as bad an accident, if not a worse one. If there were any appreciable distance between the end of the car and the bumper, the bumper would have afforded no protection, as it could not have prevented the shock of the collision by which the plaintiff was thrown to the track, or the car next to the one he was on from passing over his arm. The reason the condition of the end of the car being against the bumper is the one least likely to exist, is that the trestle for the distance of nearly one hundred and fifty feet from the end of it was level. If, as the plaintiff testified, it was necessary to use a crowbar to move the cars at the sheds, it is evident that there was no occasion for the exercise of any precaution that the end car should be against the bumper. This also shows that no bumper was, in fact, needed in the conduct of the business of the company, unless the track was inclined at that point, except as a safeguard against a backing train during the brief period work on the trestle was suspended.

From any point of view, the absence of the bumper had nothing to do with the accident. The cause, and the only cause of it, was the defective brake and the use, in its place,

of small blocks of wood picked up at randon.   This, unquestionably, was negligence.   It being admitted that the company had exercised reasonable care in the selection of faithful and competent employees, whose negligence was it, the company's or that of the fellow servants ?   The evidence for the defendant that the cars and the brakes were sound when brought to the yard is not disputed.   The trucks and bodies arrived separate.   They were unloaded and put together in the yard, and were in first class condition.   There were twenty cars in all—five with brakes and fifteen without brakes.  They were new cars and had been in use only ten days before the accident.

Not only were the cars and brakes new and in sound condition when put together in the yard of the company, but they were as many as were needed for the company's purposes. At the time of the accident the only need of cars with brakes was to hold the dirt train on the incline, when the engine was cut off.   For this purpose two cars with brakes were sufficient.   There were, therefore, in the yard of the company at that time three cars with brakes besides the two which were a part of the dirt train, any one *or more* of which could have been used in the place of the car with the broken brake.   The brakes were the equipment supplied by the company for the express purpose of holding the train on the incline.

Thus the company discharged the full measure of its legal duty to the plaintiff to exercise reasonable care in the selection of faithful and competent fellow servants and to procure sound machinery.   By no rule of responsibility can it be charged with the use of small blocks of wood picked up at randon, which was the cause of the accident, when it had supplied not only the means of repairing the brake, but other cars with brakes which were available for use in its place.   The persons to be charged with that act are the ones who did it, Parrott and Lynch, and as they were fellow servants with the plaintiff, the company is not liable.   Nor is it liable if, as Parrott testified, they were told to use the blocks by Moore, for Moore and the plaintiff were fellow servants.   There is absolutely no

evidence in the record that before the accident happened to the plaintiff the defendant had the faintest knowledge or information that the brake on one of the cars was broken, or that Parrott and Lynch had been using in place thereof small blocks of wood picked up at randon. If, as the appellant earnestly contends, the sole cause of the accident was the broken brake, it is clear that the evidence was not legally sufficient to entitle the plaintiff to recover, *unless* the defendant did not, so far as it could, use reasonable care to avoid exposing the plaintiff to extraordinary risks, which could not have been reasonably anticipated at the time of the contract of service, *and* such risks were not known to the plaintiff, *and*, by the exercise of reasonable care, could not have been discovered by him. *Wonder's Case*, 32 Md. 417; *Yate's Case*, 69 Md. 370.

If it be assumed, for the sake of argument, that the absence of a bumper at the end of the trestle was negligence, and that the accident was partly due to it, it was, as in the case of the broken brake, the negligence of a fellow servant. It is conceded that it was the intention of the company to extend the trestle beyond the point where it was when the accident occurred. There is no evidence at all that the temporary suspension of work on the trestle was brought to the knowledge of the company. The entire *onus* of proof was on the plaintiff, and the plaintiff and Walker must be held to have been fellow servants, unless it was proved that the defendant relinquished to the judgment and discretion of Walker "all supervision of the work, and entrusted to it not only the supervision and direction of the work, but the selection and employment of laborers, and the procuring of materials, machinery and other instrumentalities necessary for the service." Only in such case could Walker have been a *vice-principal*, for whose omissions or negligence in the discharge of those duties the defendant would have been liable. *State* v. *Malster and Roaney*, 57 Md. 287; *Yate's Case, supra.*

*Albert Constable* (with whom were *Jas. J. Archer* and *Albert Constable, Jr.*, on the brief), for the appellee.

Defendant excepted in the Court below to plaintiff's first prayer on the ground that there was no evidence of defendant's negligence, and also offered its first prayer upon that theory. But counsel could scarcely have been serious in saying that the place—this trestle—where plaintiff had been assigned to work was, having regard to the facts that this was an open trestle, constructed at an elevation of twelve feet above the surface of the ground, upon a steep incline, without a bumper, and that the cars used upon it were, many of them, without brakes and such as had brakes permitted, for want of necessary repairs, to become unsafe and dangerous; and further, were used in that unsafe condition, was a reasonably safe place for its workmen elevated upon the top of its kaolin cars, seventeen feet from the ground, where, in case of an accident, they would have no opportunity for escape. It was certainly exposing them to *unnecessary* danger, and *unnecessary* danger is always negligence in the master. *Indermaur* v. *Dames*, L. R., 1 C. P. 288; *Abel* v. *Delaware and Hudson Canal*, 128 N. Y. 664; *Paulmier Adr.* v. *Erie R. R.*, 5 Vroom, 154.

: Then in regard to the necessity of a bumper, we have the uncontradicted testimony of two very experienced men, to the fact that this trestle was, by reason of the absence of a bumper, an unsafe and dangerous place to operate cars. Both of them said that, in all their experience, they had never seen such a thing as a railroad trestle without the equipment of a bumper. In *Daniel* v. *Metropolitan Railroad*, L. R., 3 C. P., it is said, as we think with great force, that "what is usual among practical men in the ordinary transactions of life, is cogent evidence of what it is reasonable to do in similar circumstances, and the omission to do so is evidence of negligence."

Now Baker and Seeds who were, with the exception of Lynch (who was not asked as to this) the only eye witnesses to the accident, concur in saying that a bumper at the end of the trestle would have prevented the accident. Even if we con-

cede (which we by no means do) that the defendant was not responsible for the broken brake upon one of the cars of the dirt train, and that .that neglect was the neglect of a co-employee, still the escape of the dirt train and its descent down the incline upon the stationary kaolin train, was something. that should have been guarded against, especially as only five of the twenty cars procured for work upon this heavy grade had brakes. Even if the escape of the dirt cars was a pure accident, reasonable provision against accidents of that sort should have been made by defendant. . And a bumper at the end of the trestle to arrest the downward movement of the cars would have been such a provision. In *Abel* v. *Delaware & Hudson Canal Co.*, 128 N. Y. 664, the Court says : "The rule that the servant takes the risk of the business is subject to the qualification that the master must exercise reasonable care to guard the servant while engaged in his duties, from unnecessary hazards, *including hazards from negligence of co-employees.* In the business of a railroad this duty is especially important .in view of the dangers of the employment,. and the serious consequence likely to ensue from the negligence of co-employees."

Defendant argued in the Court below, and several of its prayers are predicated upon that theory, that knowledge of a defect in the machinery or structure which made the place where a servant worked unnecessarily, and therefore unreasonably, dangerous, took away the servant's right of action, because it showed that the risk had been voluntarily accepted and assumed by him. But it is not a knowledge of the *defect* but of the *risk* and *danger* arising from the defect, which can be relied upon to show an assumption of the risk. *Wood's Master and Servant*, p. 763 (2nd ed.), says: "But not only the defects, but the danger must be known to him." *Scholl* v. *Cole*, 107 Pa. St. 1; *Snow* v. *Housatonic R. R.*, 8 Allen, 441, 450; *Lawless* v. *Connecticut R. R.*, 136 Mass. 1; *Ferrin* v. *Old Colony R. R.*, 143 Mass.; *Cooke* v. *St. Paul R. R.*, 34 Minn. 45; *Russell* v. *Minn.*, 32 Minn. 230; *Clark* v. *Holmes*, 7. H. & N. 937.

No doubt, there may be cases where knowledge of the defect *necessarily* carries with it a knowledge of the resulting danger.   But that was not so here.   The *ultimate* fact to be proved, is knowledge of the risk and danger, not of the defect which caused the danger.   Knowledge of the defect may be *evidence*, more or less strong, according to the circumstances, to prove knowledge of the risk, but it is not the *ultimate* material fact in the inquiry as to assumption of risk.   No doubt, the circumstances in which it exists may in some cases be such that only one inference is possible ; otherwise it is a question of fact for the jury and not of law for the Court.

But we deny that there was in this case, any knowledge by the plaintiff either of the defect or of the risk and danger. There was no *evidence* in the case from which the jury, acting reasonably, could have found either fact.

There are two theories of defendant's liability in this case, upon either of which plaintiff could base his claim to recover. *First.* It would be liable if the escape of the cars was caused by a defective brake, provided that defect existed by defendant's neglect, and that the danger arising therefrom was not *assumed* by the plaintiff.   *Secondly.* Admitting that defendant was not responsible to the plaintiff for the escape of the cars or the defective brake which caused it, still it would be liable if there was *another* defect (the absence of the bumper), existing by defendant's neglect, without which latter defect the escape of the train would have been harmless.

If a defendant's neglect contributes materially and proximately, to the injury, it will be no defense to set up another co-operating cause, unless that other cause be a negligent act or omission of the plaintiff himself.   That is settled by many authorities.   *Paulmier Adr.* v. *Erie R. R.*, 5 Vroom, 151, 155 (34 N. J. L.); *Grand Trunk Railway* v. *Cummings*, 106 U. S. 700; *Elmer* v. *Locke*, 135 Mass. 575; *Clark* v. *Soule*, 137 Mass. 380; *Stewart* v. *Stringham*, 100 N. Y. 516; *Ellis* v. *N. Y. & C. R. R.*, 95 N. Y. 546, 553; *Kaiser* v. *Flaccus*, 138 Pa. St. 332; *Burrell Township* v. *Uncapher*, 117 Pa. St. 353; *Mann* v. *Weiand*, 32 P. F. Smith, 243, 256; *Cowan Adr.* v. *Chicago*

& C. R. R., 80 Wis. 284; Sherman v. The Menominee Co., 72 Wis. 122; Hayes v. Michigan Central R. R., 111 U. S. 228, 241; Kennedy v. County Commissioners, 69 Md. 65.

Defendant's fifth prayer was properly rejected. The theory of the prayer is, that if when the defendant *originally* procured the cars they were in good order, it had no further duty in regard to them, unless it had actual knowledge that they had gotten out of order. That is not accurate statement of the law. The master must not only procure sound tools, machinery, etc., but he must use reasonable care to *maintain them* in that order. Pikesville R. R. v. Russell, 88 Md. 563, 571; B. & O. R. R. v. Stricker, 51 Md. 47, 69; Hough v. Railway Co., 100 U. S. 213, 218; Northern Pacific R. R. v. Herbert, 116 U. S. 642; Baltimore & Potomac R. R. v. Mackey, 157 U. S. 72, 87; Ford v. Eitchburg R. R., 110 Mass. 240; Corcoran v. Holbrook, 59 N. Y. 517; Fuller v. Jewett, 80 N. Y. 46; Pantzar v. Tilly-Foster Iron Co., 99 N. Y. 368; Shanny v, Androscoggin Mills, 66 Maine, 420; Besser v. Chicago N. W. R. R., 45 Wisc. 477, 481; Toledo, Peoria & Warsaw R. R. v. Conroy, 68 Ill. 560; Drymala v. Thompson, 26 Minn. 40, 41 L. R. A. 74–76; Union Pacific R. Co. v. Daniels, 152 U. S. 684; Moran's case, 44 Md. 293.

BRISCOE, J., delivered the opinion of the Court.

This suit was brought by the appellee against the appellant to recover damages for an injury alleged to have been sustained by him, through the negligence of the defendant. The appellant is a corporation duly incorporated under the laws of the State and conducts a kaolin plant near the town of North East, in Cecil County. At the time of the accident it was engaged in the business of refining clay and operated a railroad and cars for the purpose of carrying clay from the pits where it was dug to the works where it was refined. The plaintiff was employed by the company as a laborer for the purpose of unloading the clay from its cars and while so employed was knocked off the car where he was at work and was permanently injured by being run over by a wheel of one of the defendant's cars.

The declaration contains three counts.  The first avers that the defendant had constructed its railroad in a defective and improper manner, and that by its negligence the end of the track upon the trestle of the road was unguarded by a bumper, or any device whatever, to prevent the cars, upon which it was necessary for the plaintiff to work, from being thrown over the end of the trestle.  The second count avers that by the negligence of the defendant the cars used by it upon its railroad were without brakes or other contrivance of that nature, which the defendant knew but of which the plaintiff was ignorant.  The third count alleges that the accident was due to the combined causes alleged in the first and second counts.

The defendant pleaded not guilty and the judgment being in favor of the plaintiff, the defendant has appealed.

It will be thus seen that the contention of the appellee in this case is, first, that the accident was due to the absence of a bumper at the end of the trestle, and second, to the failure of the defendant to have brakes upon the cars carrying the dirt trains.

There are a number of questions raised by the rulings of the Court on the prayers presented at the trial below but we only deem it necessary for the purposes of this case to consider the action of the Court in rejecting the defendant's first prayer, and that reads : "There is no evidence of any such negligence on the part of the defendant in the discharge of its legal obligations to the plaintiff as entitled him to recover in this action."   This prayer, which was rejected by the Court below, raised the question of the legal sufficiency of the evidence and of the right of the plaintiff to recover, under the evidence, in the case.

It appears from the evidence that the plaintiff had been employed as a laborer by the defendant company from September, 1896, to April 21st, 1898, but during the construction of the railroad trestle had been employed to work around the company's sheds together with other workmen in loading and unloading cars at its koalin works.   It further appears that the defendant operated a railroad and cars for the purpose of

carrying the clay from the clay pits, which were located in the nothern part of the company's property, to the sheds or works in the southern part, where the clay was dumped from the cars to be refined ; that in transporting the clay from the pits to the works it was necessary to cross the tracks of the P. W. & B. Railroad which passed east and west through the defendant's property, and that the defendant's works were located between the North East river and the tracks of the last mentioned railroad.

A bridge had been built over the railroad tracks and a trestle from the pit above the railroad to the bridge, and from the bridge to the sheds below the railroad. The clay was hauled from the pits to the works on the river, "in cars drawn by an engine over the tracks which crossed the railroad on a bridge about thirty feet high and then to the works, where the cars were unloaded ; that the tracks below the bridge are located on a trestle which is about thirteen feet high and terminating about 427 feet below the bridge, there being an incline from the bridge to the river of about 300 feet, the grade being about six feet, but that the track was level for the rest of the distance to the end of the trestle ;" "that across the tracks at end of the trestle there was at the time of the accident an ordinary railroad cross tie fastened by ropes to keep the cars from being thrown over the end of trestle, the cross tie being six by eight inches."

The plaintiff testified that on the evening of the 20th of April "he went to the pit and helped to load four cars, and went from the pit home leaving the cars standing there ; that on the morning of the 21st he returned to the works and found four cars standing at the same place where he had before unloaded them, and he and the other workmen, two others, climbed up to the trestle and began to unload ; that these cars were standing on the track the last car reaching to the end of the trestle ; that he and the other workmen had unloaded two of the cars and were unloading the third ; his back being toward the bridge, when suddenly, a fellow workman, who was facing the bridge, threw his shovel down and

leaped from the car; that he turned and saw the train of five cars descending the track from toward the bridge and within six or eight feet from the train in which he was working, that he turned in an effort to escape, but at that instant the leading car of the descending train struck the train in which he was working and he was thrown head foremost from his car, falling with arms across the iron rail of the track; that one of the cars of the stationary train ran over his arm, crushing it so that it had to be amputated up to the shoulder; that he was at the time unloading the third car from the end of the trestle, so that there was a car between him and the descending car train."

The evidence further shows that the dirt train which was in charge of workmen employed by the defendant company was hauling dirt and dumping it into the trestle south of the bridge. This train was composed of an engine and five cars, only two of the cars had brakes, and one of these was broken; that small blocks of wood, about two inches thick, were used by the train men to block the wheels in the place of brakes. As soon as the engine was detached and the first dirt car was dumped the jar started the five cars down the incline (the brake and the blocks not being sufficient to hold the cars) and struck the stationary train, where the plaintiff was at work, and injured him.

At the time of the accident, there were four men with the train named Parrott, Lynch, Page and an Italian. A workman named Moore had charge of the dirt train and it was his duty to keep the machinery in repair. The dirt train was made up according to Moore's orders, and he directed the particular cars to be used, and told the workmen to use short blocks of wood six or eight inches long to hold the cars on the incline while the dirt was being dumped from the cars; that the company had twenty cars and five of these had brakes.

Now we do not consider it necessary to review the testimony at length, nor to discuss it in detail, because we think, it clearly appears from what has been stated that the immediate and direct cause of the accident was the absence of brakes on the

dirt train, operated by the defendant.    There can be no diffi-
culty in this State as to the rule of law applicable to a case
like this where a servant sues his master for injuries resulting
from the negligence of a fellow servant.    All of the cases hold
that one of the risks which the servant takes upon himself
when he enters the service of a master is the negligence of
fellow servants.    The law upon this subject has been fully
considered by repeated decisions of this Court.    *Wonder* v.
*The B. & O. R. R. Co.*, 32 Md. 411; *State* v. *Malster & Reaney*,
57 Md. 287; *Yates* v. *McCullough Iron Co.*, 69 Md. 370; *Mayor
and City Council of Balto.* v. *War*, 77 Md. 593; *O' Connell* v.
*B. & O. R. Co.*, 20 Md. 212.

We have examined the testimony in this case with great
care, and we can find no proof whatever of any such negligence
on the part of the master as would make it liable in this action.
The cause of the injury, it seems to us, was not due to any
negligence on the part of the master, but it was solely caused
by the use of a car by a fellow servant with a defective break,
instead of using one with a good brake.    There were three
other cars with safe brakes which had been provided by the
company and which could have been used on the day of the
accident.    It is clear, we think, that the master cannot be held
liable in this case for the carelessness and negligence of the
fellow servant in using the car with a defective brake, which
caused the injury.    In *Yates* v. *McCullough Iron Works*, 69 Md.
385, it is distinctly said:    If the servants "are in the employment
of the same master, engaged in the same common work, and
performing duties and services pertaining to the same general
business, the master cannot be held liable to the one servant
for injuries caused by the negligent or unskilful conduct of
another, unless he has been negligent in employing or retain-
ing in his service such negligent servant."

There is not a particle of evidence to show that the master
had not exercised reasonable care in the selection of its em-
ployees or in retaining negligent ones in its service.    There is
no dispute as to the extent to which Moore, Parrott and
Lynch, were representatives of the company, and it is admitted

that under the evidence, they were fellow servants of the plaintiff.

But it is contended by the appellee that the result of the accident was not only due to the failure of the appellant to have brakes upon its cars, but to the want of a bumper at the end of the trestle.   Now if we concede the appellee's contention in this respect we are brought to the same conclusion as in the case of the broken brake, and that is that under the facts of the case it was the negligence of a fellow servant. The witness Seeds testified that he was employed by the defendant company to build the trestle or a portion of it where the plaintiff was injured and the work was done under the direction of the company's superintendent, Mr. Walker.   We find nothing in this case that would bring it within the exception to the general rule that a superintendent or manager is a fellow servant within the rule which exonerates the master. *Moran's case*, 44 Md. 293.

To make the superintendent a vice-principal so as to hold the master liable for his negligence the latter must relinquish all supervision of the work and entrust not only the supervision and direction of the work but the selection and employment of laborers and the procuring of materials, machinery, &c., necessary for the service.   The proof in this case does not march up to the requirement of the rule just stated. *Balto. Elevator Co.* v. *Neal*, 65 Md.; *N. P. R. R. Co.* v. *Herbert*, 116 U. S. 642.

But it is insisted upon the part of the plaintiff, that the negligence of a fellow servant will not defeat the right of action, if the negligence of the company materially and approximately contributed to the injury.   The answer to this contention is that the present case does not come within that rule.   According to the evidence here the company had exercised reasonable care in the selection of competent fellow servants and in the procuring of proper and suitable machinery.   The plaintiff had been employed unloading cars at the same place where the accident occurred on the 18th, 19th and 20th of the same month, and the cars had not moved while they were

at work on those days.   He testified that the track at that point seemed perfectly level and when they wanted to move the cars they had to use crowbars.   The direct cause of the injury, as we have said, was the use of the car with a broken brake and for the negligence and carelessness of the fellow servant in using this car, when there were other good and safe cars, which had been provided by the company, the defendant cannot be held liable.

For the error then in refusing to grant the appellant's first prayer which instructed the jury that there was no evidence of any such negligence on the part of the defendant, as entitled the plaintiff to recover, the judgment will be reversed, and as there can be no recovery, a new trial will not be awarded

*Judgment reversed, and new trial re-*
*fused, with costs.*

(Decided January 30th, 1902.)   A re-argument on the question whether the case should have been allowed to go the jury was had at the October Term, 1902, and on November 20th, 1902, the Court passed an order re-affirming the judgment of reversal for the reasons given in the foregoing opinion.

PEARCE, J., dissented and delivered the following opinion.

My convictions of the principles which should control the decision of this case are so strong that I am constrained to dissent from the opinion of the Court, though I am aware that dissenting opinions are very often, and sometimes correctly, regarded as idle if not pernicious work ; nevertheless they are sometimes justified in order to relieve the dissenting Judge from the imputation of that which, unexplained, might appear to be merely captious difference or obstinate adherence to individual opinion.

After stating such facts as the Court considered necessary for the proper understanding of the case, the opinion says: "We only deem it necessary for the purposes of this case to consider the action of the Court in rejecting the defendants' first prayer, which reads as follows : "The defendant prays the Court to instruct the jury that there was no evidence in this case of any such negligence on the part of the defendant in

the discharge of its legal obligations to the plaintiff as entitles him to recover in this action ;'' * * ''and we think it clearly appears from what has been stated, that the immediate and direct cause of the accident was the absence of brakes on the dirt train operated by the defendant. * * The cause of the injury, as it seems to us, was not due to any negligence on the part of the master, but solely to the use of a car, by a fellow servant, with a defective brake, instead of using one with a good brake. But it is contended by the appellee that the result of the accident was due not only to the failure of the appellant to have brakes upon its cars, but to the want of a bumper at the end of the trestle. Now if we concede the appellees' contention in this respect, we are brought to the same conclusion as in the case of the broken brake, and that is, that under the facts of the case, it was the negligence of a fellow servant. The witness Seeds testified that he was employed by the defendant company to build the trestle, or a portion of it, where the plaintiff was injured, and that the work was done under the direction of the company's superintendent, Walker. We find nothing in this case that would bring it within the exception to the general rule that a superintendent or manager is a fellow servant within the rule which exonerates the master.''

I have reproduced the above passages from the opinion of the Court, and have put them in juxtaposition, because, so placed, they tersely and clearly present the whole view of the case taken by the Court. The seventh prayer of defendant was clearly designed by its counsel, and understood by the Court in granting it, to apply only to the second count, which charged the injury to be the result of using cars without brakes. By that prayer the jury was instructed that if they believed the accident was caused by the negligence of the fellow servants of the plaintiff, then the plaintiff was not entitled to recover, and further that Moore, Parrott and Lynch, by whom the dirt train was made up and operated, were fellow servants of the plaintiff. That it was intended to apply only to the second count is manifest from the refusal of the Court to grant the defendant's first prayer, for if the Circuit Court

had held, as this Court has done, that the want of a bumper·
at the end of the trestle was the negligence· of a fellow ser-·
vant, it must necessarily have granted ·that prayer, since only
two causes of the accident were alleged, and if both of these
arose from the negligence of fellow servants, then· neither·
cause, ·nor both combined, could warrant a ·recovery.· The
theory therefore upon which the rulings of the Circuit Court·
were made upon the first and seventh prayers of the defendant·
was that the want of ·brakes upon the dirt cars was the negli-
gence of fellow servants for which no recovery could be·had,
but that the want of a bumper· at the end of the trestle was
not the negligence of a fellow servant, but that of the master,·
for which recovery could be had upon proper proof, and that
there was evidence in the case to go to the jury from· which·
they could find that such negligence caused, or contributed to,
the injury complained of.   To my mind it·is clear that these
rulings were correct, and in· endeavoring to maintain this·
position it is necessary before considering the principles upon·
which the granting or rejection of defendant's first prayer must
depend, to refer to the testimony supporting the· theory upon·
which it was refused by the Circuit Court.

The undisputed proof is that the trestle is thirteen feet above
the ground and without a bumper of any description to keep
the cars from being thrown from the end ; that to supply this
defect in the construction of the trestle, an ordinary railroad
tie, 6x8 inches, was placed across the track near the end of
the trestle, and was *fastened with ropes.*   The plaintiff testified
that at the time of the accident there were four cars loaded
with clay standing on the trestle, the last car being near the
end of the trestle, that he was standing on the third car from
the end, unloading it, when his fellow workman leaped from
the car, that he turned and saw the descending dirt train within
six or eight feet of the car in front of him ; that he made an
effort to escape, but at that instant the approaching cars struck
the car in front of him with such force as to throw him upon·
the track, and drive back the cars on which he was working,
and that the· car of his train in front of him passed over his

arm, which had to be amputated at the shoulder.     He testified that he had never seen the trestle until he was told to go to work there April 18th, and he was injured April 20th, and that he did not know the absence of a bumper, or the substitution of a cross tie in its place, and that neither the absence of a bumper nor the cross tie could be seen where he worked, nor from the point where he approached and got upon the trestle.

James L. Baker testified that he had worked all his life for the P. W. & B. R. Co., building, repairing and maintaining railroad tracks, and was familiar with cars and brakes, sidings and bumpers, and with the trestle on which the accident occurred, he being the section boss of the P. W. & B. R. Co. at that point; that he had never seen such a trestle without a bumper to hold the cars; and that it was unsafe and dangerous without a bumper; that the cross tie used in its place was insufficient and unfit for the purpose, and could not be seen unless one stood at the end of the trestle in front of it, or some distance to the side at that point; that he witnessed the accident from a distance of about 200 yards, saw the dirt train strike the other cars, saw plaintiff fall and the car pass over him, and saw two of the cars driven off the end of the trestle and fall to the ground; that this could not have occurred if there had been a bumper, and that even if the blow had been sufficient to throw the plaintiff on the track, the bumper would have held the cars, and plaintiff could not have been run over, and that in his judgment the want of a bumper caused the accident.

Wm. F. Seeds testified that he was a contractor and was employed by the defendant to extend this trestle about 150 feet, doing the work under the direction of the company's superintendent, Mr. Walker.     That when the extension was completed, Walker told him to go to work in the clay troughs; that he told Walker there ought to be a bumper at the end of the trestle to hold the cars, as it could not be safely used without it, and that he asked Walker to allow him to put a bumper there, but Walker said he would attend to that, and sent him

to the troughs; that he had seen and built a number of such trestles, but had never built or seen one without a bumper, and that this structure was dangerous without one, and that Walker put on the trestle the cross tie used in lieu of a bumper ; that he witnessed the accident and that if there had been a proper bumper the cars on which plaintiff was could not have been moved, and plaintiff could not have been injured in the manner that he was.

This testimony was absolutely uncontradicted, and if it does not establish negligence in the construction of the trestle, I am at a loss to understand how it could be established by any testimony.    But the Court holds that if it be conceded there was negligence in the construction of the trestle, it was nevertheless the negligence of a fellow servant, because Seeds testified he built the extension of the trestle under the direction of Walker, the company's superintendent, and because Walker was also a fellow servant within the rule which exonerates the master.    To this conclusion I find it impossible to assent.    It is doubtless true that for some, indeed for many purposes, as illustrated by the language of this Court in *Wonder's case*, 32 Md. 411, and the cases which have followed it, that in the *mere operation* of machinery or appliances free from defect or danger when provided by the master, but in which dangerous defects have developed by use, an inspector of machinery or a superintendent of operation, may be a fellow servant for whose negligence there can be no recovery, though there is manifest a tendency in many of the Courts of this country to qualify this rule by requiring of the master the same care to *maintain* as to *provide* safe machinery and appliances, and the same liability for neglect in this regard.    How far this Court has evinced such disposition, it is not material here to inquire.    But as I understand the law, it is every where held that it is the master's duty to provide a safe place for the servants work, and that under no state of facts, except where contributory negligence of the plaintiff is established, can a master relieve himself of liability for this neglect of duty, and in this case there is no question of contributory negligence on the plain-

tiff's part. In *American Tobacco Co.* v. *Strickling*, 88 Md. 504, this Court cited with approval the following passage from *B. & O. R. R.* v. *Baugh*, 149 U. S. 368: "A master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe," and as especially applicable to the case now under consideration, I cite a passage from the same case on the same page. "Of course, some places of work and some kinds of machinery are more dangerous than others, but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But within such limits, the master who provides the place, the tools and the machinery, owes a positive duty to his employee in respect thereto. That positive duty does not go to the extent of a guarantee of safety, but it does require that reasonable precautions be taken to ensure safety, and it matters not to the employee by whom that safety is secured, or the reasonable precautions therefor taken. *He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employee, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employees to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master. But if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer, before he is held liable therefor.*"

In the *American Tobacco Co.'s case, supra,* there was no such question made as in the case I am discussing, and there was no occasion to cite there that portion of the opinion in *B. & O. R. R.* v. *Baugh,* which I have reproduced here as bearing directly upon the view taken by the opinion of the Court in this case.

The same law is declared by State Courts of the highest reputation. In *Flike* v. *Boston and Albany R. R.*, 53 N. Y. 549, CHIEF JUSTICE CHURCH said : "The true rule, I apprehend, is to hold the corporation liable for negligence or want of proper care in respect to such acts and duties as it is required to perform and discharge as master or principal, without regard to the rank or title of the agent intrusted with their performance.   As to such acts, the agent occupies the place of the corporation, and the latter should be deemed present, and consequently liable for the manner in which they are performed."   There, a train dispatcher sent out a heavy freight train with but two brakemen where at least three were required, and the train broke in two, and in consequence of the want of necessary brakemen, the rear part ran back and collided with another train killing the fireman, and the corporation was held liable.

In *Corcoran* v. *Holbrook*, 59 N. Y. 517, the rule laid down in 53 N. Y. *supra*, was held applicable as well to individuals as to corporations.

In *Paulmier* v. *Erie R. R.*, 34 N. J. L. (5 Vroom) 151, where the track over a trestle work was not capable of supporting an engine, and the engineer in charge had orders not to put his engine thereon, which orders he disobeyed, and the fireman on the engine who was not aware of these orders, or of the danger, was killed by the trestle giving way, his administrator was held entitled to recover on the ground that the defendant had not provided a safe place for the work of the servant.

And in *Elmer* v. *Locke*, 135 Mass. 575, where a brakeman was injured by the fall of a defective trestle, it was held the master could not escape liability by proving that he delegated to a proper agent the construction and repair of the trestle.

The cases cited are sufficient to establish and illustrate the law they announce, and the reasons upon which it is founded, and the testimony is ample to show that the absence of a bumper, made the trestle an unsafe and dangerous structure for the servants of the defendant, and that but for the negli-

gence of the defendant the accident could not have occurred. Upon both these points the testimony of Seeds and Baker is positive, and it is uncontradicted by any witness or by any circumstance in the case.    Both of these are experienced men in railroad matters, and both testified that in all their experience in the construction and use of such trestles, they had never seen one without a bumper.    In considering the weight of such testimony in *Daniel* v. *Metropolitan R. R.*, L. R. 3 C. P. 216, it was observed that "what is usual among practical men in ordinary transactions of life, is cogent evidence of what it is reasonable to do in similar circumstances and the omission to do so is evidence of negligence."  In view of the authorities which uniformly charge the master with the absolute duty to provide a safe place for the work of his servants, and of the clear and undisputed evidence which shows that this trestle was a dangerous structure, I am unable to see how the defendant's first prayer could have been properly granted.

But it is said by the Court in this case, that the injury "was *solely* caused by the use of a car with a defective brake," and if this be a correct legal conclusion which the *Court* was authorized to draw, I concede that it is not material that the defendant was guilty of negligence in putting the servant to work upon a dangerous trestle, since negligence which neither causes, nor materially contributes to injury, is not actionable negligence.  I cannot therefore properly conclude this opinion without considering this branch of the view of the Court.

In the opinion of the Court, "the immediate and direct cause of the accident was the absence of brakes on the dirt train."    I agree that this was the immediate and direct cause of the *collision of the two trains*, and that it was therefore the primary cause (primary in point of time) of *the injury of the plaintiff*, which is the cause of action here ; but in my judgment the immediate and direct cause of that injury was the want of a bumper, since according to the uncontradicted testimony in the case the cars could not have moved by the collision if there had been a proper bumper to hold them instead of a cross tie fastened by ropes, and thus the cars could not

have passed over his arm necessitating its amputation. It will be observed that it was not the fall from the cars to the track (which might perhaps have occurred if there had been no bumper) that crushed his arm and necessitated its amputation, but the driving back of the car in front of plaintiff, which could not have occurred if there had been a proper bumper. It was for the loss of the arm, and not for the fall upon the track that the verdict awarded the damages given. In *Maryland Steel Co.* v. *Marney*, 88 Md. 495, we applied the following language of JUDGE ALVEY in *Balt. and Potomac R. R.* v. *Reaney*, 42 Md. 136. "Courts do not indulge in refinements and subtleties as to causation that would defeat the claims of natural justice    They rather adopt the practical rule that *the efficient and predominating cause in producing a given event or effect*, though there may be subordinate and independent causes in operation, must be looked to in determining the rights and liabilities of the parties concerned.    *    *    *    *
And no wrongdoer ought to be allowed to apportion or qualify his own wrong.    To entitle him to exemption *he* must show not only that the *same loss might* have happened, but that it *must* have happened, if the act complained of had not been done." A most instructive illustration of the application of this reasoning will be found in a recent Pennsylvania case, *Webster* v. *The Monongahela Coal Co.*, 201 Pa. 278. In that case plaintiff was a "dilley rider" in defendant's coal mine, the cars on which he rode being drawn out of the mine by means of a wire operated by a stationary engine at the mouth of the mine. In making the trip the cars frequently jumped the track, and in that event the dilley rider was compelled to leave his seat and seek safety in "manholes" or excavations in the walls of the tunnel. On one of these occasions while running to a manhole he was struck on the head by a timber projecting from the roof of the tunnel, and was seriously injured. The company asked that a verdict be directed for it, on the theory that the projecting timber was not the proximate cause of the accident. The Court said: "It is argued by defendant's counsel that it (the projecting timber) was the remote or

concurring cause of the accident, and that without the inter-
vening cause of the cars jumping the track, the plaintiff would
not have been injured.  But the intervening cause will not
prevent a recovery if the injury inflicted was the natural and
probable consequence of the negligence of defendant in per-
mitting the timber to project from the roof.  It cannot be said
that the plaintiff's injuries, inflicted by the projecting timber,
were a natural and probable consequence of the derailment ot
the train.  That might well have occurred, and the plaintiff
not have been injured by the projecting timber.  The *final re-
sult* cannot be said to be the natural and probable consequence
of the *primary cause.*   On the other hand, it was both a nat-
ural and probable result, and one to be anticipated by the com-
pany, that a fall in the roof by reason of unsafe and defective
timbers might cause an injury to the employees engaged in
that tunnel.  The proximate cause of the plaintiff's injuries
therefore was the intermediate and independent act of the de-
fendant in carelessly and negligently permitting the roof of
the mine to remain in an unsafe and dangerous condition.  As
was said by our brother DEAN, in *Sturgis* v. *Kountz,* 165 Pa. 365:
"The primary is by no means always the natural and probable
cause of a particular injury.   *It is not, when* there is a *suffi-
cient and independent cause between it and the injury.*"  And in
*Moulton* v. *The Inhabitants of Sanford,* 51 Maine, 134, CHIEF
JUSTICE APPLETON, speaking for the Court, says : "Ordinarily
that condition is usually termed the cause, whose share in the
matter is most conspicuous, and is the most immediately pre-
ceding and proximate in the event."

   In the case above cited, as in the case I am now consider-
ing, the question as to defendant's negligence is well stated in
*Hayes* v. *Mich. Cent. R. R.,* 111 U. S. 241 as follows : " Was
it *causa sine qua non,* a cause which if it had not existed, the
injury would not have taken place ; an occasional cause ? *And
that is a question of fact, unless the causal connection is evidently
not proximate.*"   And where defendant has been guilty of neg-
ligence, in consequence whereof an injury had been suffered
by plaintiff, the same principle was declared in *Burrell Town-*

*ship* v. *Uncapher Township*, 117 Pa. St. 362, where the Court said : · " It is no answer to say that some one else was guilty of an independent act of negligence without which the injury would·not have been suffered."

In *Paulmier* v. *Erie R. R.*, *supra*, it was expressly held that where a servant has received an injury occasioned in part by the negligence of his master, and in part by that of a fellow servant, he can ̈maintain an action against his master for such injury, the reason being, as stated by the Court, that "the servant does not agree to take the chance of any negligence on the part of his master, and no case has gone so far as to hold that where such negligence contributes to the injury, the servant may not recover."   So in *Elmer* v. *Locke*, *supra*, where a brakeman received injuries caused partly by the defective construction of a trestle and partly by the negligence of a fellow servant, it was held he could recover, the Court saying : "The relation in which those who together manage the train and track *for the purpose of transportation*, is quite different from that which they bear to those *who perform the work of its construction and repair*, and they have the right to expect the suitable instrumentalities and·appliances which it is the duty of·the master to furnish."

In *Stringham* v. ·*Stewart.* · 100 N. Y. 516, it is said : "The rule which excuses a master from liability to a servant for injuries caused by the negligence of a co-servant, presupposes that ̈the master ̈ has performed the duties which the law imposes upon him, and that no negligence in this respect contributed to the injury."

In *Deserant* v. *Cerillos Coal Co.*, 178 U. S. 420, the Supreme Court says : "It is undoubtedly the master's duty to furnish safe· appliances ̈and safe working places ̈, and if the neglect of this duty concurs with the negligence of a ̈fellow servant, the master has been held liable ; " and numerous cases are cited in support of the proposition.

I have referred to the cases above mentioned in order to show the concurrence of· opinion upon the point in the Courts of Massachusetts, ̈New York, New Jersey and Pennsylvania,

and in the Supreme Court of the United States, and the principle involved in all of them is clearly recognized in *Norfolk and Western R. R.* v. *Hoover,* 79 Md. 260, where it was said by the present Chief Justice " to be the settled doctrine of Maryland that where a servant sues his master for injuries resulting from the negligence of a fellow servant, the plaintiff, in order to succeed, must prove not only that some negligence of the fellow servant caused the injury, but also that the master had himself been guilty of negligence, either in the selection of the negligent fellow servant in the first instance, or in retaining him in his service afterwards." The substantial concurring element thus required to be found is the neglect by the defendant of *some* positive duty imposed upon him by law. In that particular case the *particular* duty neglected by the master was that of reasonable care in the selection or retention of the negligent fellow servant, while in this case the *particular* duty neglected by the master was that of reasonable care to provide a safe working place ; and it is impossible, in my opinion, to point out any sound or fair discrimination between the two cases.

If the failure to provide a bumper was negligence on the part of the defendant, then if there was any evidence from which a rational mind could find that such negligence contributed to the plaintiff's injury, the case could not properly be withdrawn from the jury, and I am at a loss to comprehend how, in the face of all the facts, and especially of the positive testimony of Seeds and Baker upon that point, this Court can hold it should have been withdrawn.

In my opinion the learned Judge of the Circuit Court was entirely right in refusing the prayer to that effect, and the judgment should be affirmed.

(Filed February 15th, 1902.)