# Webster *v.* Monongahela River Consolidated Coal and Coke Company, Appellant.

*Practice, C. P.—Trial—Rules of court.*

A trial court is the best exponent of its own rules, and the appellate court will not reverse for any construction of such rules, unless the construction is manifestly erroneous and injurious.

In the absence of manifest error the appellate court will not reverse a judgment because of the admission of evidence alleged to be not admissible under the rules of the trial court.

*Negligence—Mines and mining—Master and servant—Evidence—Remote and proximate cause.*

When a servant remains in the service of his master after he has knowledge of the dangerous condition of the place in which he is engaged, he is presumed to assume the risk of the danger; but this presumption is rebutted if the master promises to repair the defect and the danger is not so obvious or imminent that negligence can fairly be imputed to the servant for exposing himself to it.

In an action by a " dilly rider " in a mine against his employer to recover damages for personal injuries, the case is for the jury, and a verdict and judgment for plaintiff will be sustained, where the evidence for the plaintiff, although contradicted, tends to show that plaintiff was thrown off a train of which he had charge in a mine, and while running for safety to avoid the cars he was struck in the head and knocked under the cars by a timber which had broken and was projecting from the roof of the entry; that the timber was rotten and insecure; that the general superintendent had been told of this by the plaintiff six or eight weeks prior to the accident, and plaintiff was directed by the superintendent to go on with his work and was assured that the timbers would be fixed or attended to.

In such a case the unsafe condition of the timber was not the remote, but was the proximate cause of the injury. The injury inflicted was the natural and probable consequence of the negligence of the defendant in permitting the timber to project from the roof.

Argued Nov. 1, 1901. Appeal, No. 106, Oct. T., 1901, by defendant, from judgment of C. P. No. 3, Allegheny Co., Aug. T., 1900, No. 629, on verdict for plaintiff in case of Lewis Webster v. Monongahela River Consolidated Coal and Coke Company. Before McCOLLUM, C. J., MITCHELL, FELL, MESTREZAT and POTTER, JJ. Affirmed.

Trespass for personal injuries. Before McCLUNG, J.

The circumstances of the accident are detailed in the opinion of the Supreme Court.

When the plaintiff was on the stand the following offer was made :

Mr. Ivory: We propose to prove by the witness on the stand that prior to the injury complained of in this case, the plaintiff called the attention of the superintendent of the mine to the condition of the mine at about the place of the accident, and told him that in his judgment the timbers were diseased and dangerous, and that he proposed to quit on account thereof ; that the superintendent told him he must not quit; that he would investigate the mine at that place, and if the timbers were in bad and dangerous condition, he would have them fixed; and, relying upon that statement of the superintendent, the plaintiff stayed at his work.

Mr. McIlvain : The latter part of the offer is objected to, for the reason that under the pleadings and bill of particulars filed in this case and ruled to be filed, no notice was given in the pleadings of any promise to repair, or inducement for this man to remain in the employment of dilly rider, and that under the rule of court, rule 8, section 4, and under rule 120, the evidence is not competent.

Objection overruled, and exception. [1]

Defendant presented this point:

Under all the evidence, the verdict must be for the defendant. *Answer :* I refuse this point, but leave the matter to you under the instructions which I have already given you. [2]

Verdict and judgment for plaintiff for $2,250. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions ; (2) above instruction, quoting it.

*Harry A. Jones*, with him *Chas. G. McIlvain*, for appellant. —Evidence was improperly admitted and in violation of the rule of court: Latimore v. Dwelling House Ins. Co., 153 Pa. 324 ; Barckhoff v. Ecker, 184 Pa. 350.

Under all the evidence, the court should have directed a verdict for the defendant.

Even conceding that the condition of the timbers evidenced negligence on the part of defendant, yet such negligence was not the proximate cause of the injury to plaintiff: Chartiers Twp. v. Phillips, 122 Pa. 601 ; Penna. R. R. Co. v. Kerr, 62 Pa. 353 ; Marble v. Worcester, 4 Gray, 395 ; West Mahanoy Twp. v. Watson, 112 Pa. 574 ; Hoag & Alger v. Lake Shore, etc., R. R. Co., 85 Pa. 293.

Plaintiff continuing to work at the place under the circumstances makes him guilty of contributory negligence, and he cannot recover: Counsell v. Hall, 145 Mass. 468 ; 14 N. E. Repr. 530 ; Marsh v. Chickering, 101 N. Y. 396 ; 5 N. E. Repr. 56 ; District of Columbia v. McElligott, 117 U. S. 621 ; 6 Sup. Ct. Repr. 884.

There was not sufficient evidence of any negligence on the part of defendant, causing the accident, to entitle the jury to find for the plaintiff, and the court should have given binding instructions for defendant: Cauffman v. Long, 82 Pa. 72 ; Howard Express Co. v. Wile, 64 Pa. 201 ; Ford v. Anderson, 139 Pa. 261 ; Holland v. Kindregan, 155 Pa. 156 ; Moules v. Del. & Hudson Canal Co., 141 Pa. 632 ; Pittsburg, etc., R. R. Co. v. Sentmeyer, 92 Pa. 276 ; Mensch v. Penna. R. R. Co., 150 Pa. 598 ; Boyd v. Harris, 176 Pa. 484 ; Sykes v. Packer, 99 Pa. 465 ; Wannamaker v. Burke, 111 Pa. 423 ; Bradbury v. Kingston Coal Co., 157 Pa. 231.

*R. B. Ivory*, for appellee.—The case was for the jury : Sturgis v. Kountz, 165 Pa. 358.

OPINION BY MR. JUSTICE MESTREZAT, January 6, 1902 :

The plaintiff was employed by the defendant company as a " dilly rider " at its Black Diamond coal mine in Washington

county.   The mine was worked by a slope and the plaintiff had charge of the train of cars which carried the coal from the interior to the outside of the mine.   His duties required him to accompany the cars as they entered and left the mine.   As they came out of the mine he occupied a seat provided for him on the front car of the train.   The loaded train of cars was drawn out of the mine by means of a wire attached thereto and operated by a stationary engine on the outside of, and near the mouth of, the mine.   It was generally known that the cars in making a trip frequently jumped the track, and to escape injury in that event, the dilly rider was compelled to leave his seat and seek a place of safety.   " Break throughs " or manholes, are excavations of proper dimensions on the side of the entry through which the train passes, and are used as places of safety by the dilly rider and others when occasion requires it.

While the plaintiff was in discharge of his duty as a dilly rider in bringing out a train of loaded cars on the afternoon of January 22, 1900, the cars jumped the track and he was thrown from his seat on the train.   It is claimed by him, and he testifies that when he was thrown off the train he sought a place of safety by running to a " break through " and while doing so he was struck on the face or head and knocked down under the cars by a timber which had broken and was projecting from the roof of the entry.   His left hand was cut off by the cars and he was otherwise severely injured.   The plaintiff attributes his injuries to the negligence of the defendant company in permitting the timbers supporting the roof of the mine to rot and become weakened and insecure, and to remain in that unsafe condition after the company had knowledge of it.   This action was brought to recover damages for the alleged negligence. The trial resulted in a verdict for the plaintiff and from the judgment entered thereon this appeal was taken by the defendant.

The first assignment relates to the action of the court in overruling an objection to an offer of evidence.   The objection to the offer was that the statement and bill of particulars filed by the plaintiff did not aver the matter proposed to be proved, and hence, it was incompetent under a rule of the trial court.   We have repeatedly said that a court is the best exponent of its own rules, and that this court will not reverse for any construc-

tion, unless it is manifestly erroneous and injurious: Dailey v. Green, 15 Pa. 128; Higgins Carpet Co. v. Latimer, 165 Pa. 617. It is not alleged that the defendant was taken by surprise or was not prepared with testimony to meet the proof contained in this offer, and that it was thereby injuriously affected by the admission of the testimony. The only reason assigned by the defendant for the rejection of the testimony is the technical one that it was in violation of a rule of the court below. That court having construed the rule against the contention of the defendant and our examination of the pleadings and the proposed evidence having disclosed no manifest error, we will not interfere.

The other and important assignment alleges error in the court below in refusing the defendant's point that under the evidence in the case the verdict should be for the defendant. This point is based upon the theory that the testimony failed to disclose any negligence on the part of the defendant or showed that the plaintiff's negligence contributed to his injuries. Both these questions were submitted to the jury by the learned trial judge in a charge that was fair and adequate and the jury has determined both in favor of the plaintiff. Unless we are prepared to say that there was no evidence to sustain this finding the judgment of the court below must be affirmed.

If the testimony of the plaintiff's witnesses was credible, the timbers in the mine at the place and at the time the accident occurred were in a rotten and unsafe condition. This is the testimony of at least three witnesses. Matthew O'Reilly testified that the timbers were pretty well decayed and that one of the overhead timbers was broken and hung down from the roof. He also stated in reply to a question on cross-examination that the trip did not displace the upright timbers supporting the roof and that the post supporting the broken timber was standing after the accident. Ben Lauterback testified that he saw the timbers about an hour after the accident and took them out of the mine. He said they were overhead pieces and were badly diseased and that each of them had a mark on it indicating that it was unsafe. He also stated that whenever timbers were not safe the bosses marked them in this manner for removal. John Collins, another witness, testified that the timbers were in pretty bad condition and that one of them was broken.

The plaintiff testified that six or eight weeks prior to the accident he called the attention of the general superintendent to the unsafe condition of the timbers and told him that the place was getting dangerous and that he would quit work if it was not fixed. The witness was directed by the superintendent to go on with his work and was assured that the timbers would be fixed or attended to.

We have referred to the testimony on the part of the plaintiff showing how the accident occurred, the unsafe condition of the overhead timbers supporting the roof, and the knowledge of the defendant company of their defective condition and its promise to repair them. We think this testimony amply sufficient to go to the jury on the questions at issue. It is true that it was met by testimony on the part of the defendant that the timbers were sound, that the fall of the roof was caused by the cars displacing the upright supports of the roof, that no notice of a defective condition of the timbers was given, and that no promise to repair them was made. The defendant also attempted to show that the circumstances surrounding the accident contradicted the testimony of the plaintiff as to how it occurred. But the testimony of the defendant did not justify the court in withdrawing the case from the jury. If believed, it would have warranted the jury in finding a verdict for the defendant company. The court, however, could not pass upon it and declare as a matter of law that the defendant was not guilty of negligence, or that the plaintiff's injuries were the result of his own negligence.

It is also contended by the defendant that the unsafe condition of the timber was not the proximate cause of the accident, and as that is the only negligence alleged, there could be no recovery. We do not think the position is tenable. The evidence shows that the roof of the entry where the accident occurred was from five to five and one half feet high and was sufficiently high to permit the plaintiff to walk erect at that place. It also appears that the broken timber projected from the roof six inches or a foot. It must, therefore, be conceded that had it not been for the defective condition of the roof whereby the timber was broken and caused to project, the plaintiff's head would not necessarily have come in contact with the defective timber. Notwithstanding these facts, however, it is

argued by the defendant's counsel that this was the remote or concurring cause of the accident, and that without the intervening cause of the cars jumping the track the plaintiff would not have been injured. But the intervening cause will not prevent a recovery if the injury inflicted was the natural and probable consequence of the negligence of the defendant in permitting the timber to project from the roof. It cannot be said that the plaintiff's injuries, inflicted by the fallen timber, were a natural and probable consequence of the derailment of the train which was the primary cause. That might well have occurred and the plaintiff not been injured by the timber projecting from the roof. No one could have foreseen that result as a consequence of that occurrence. In the language of the court in Penna. R. R. Co. v. Hope, 80 Pa. 377, "the final result cannot be said to be the natuaral and probable consequence of the primary cause." On the other hand it was both a natural and probable result and one to be anticipated by the defendant company, that a fall in the roof, by reason of unsafe and defective timbers, might cause an injury to the employees engaged in that entry. Whether they were trying to escape a sudden danger, or were compelled to use that part of the mine for any other purpose, the consequence of injury from such condition of the mine, would readily occur to a careful and prudent man. While, therefore, if we concede that the primary cause of the accident was the derailment of the cars, yet it was not the natural and probable cause of the plaintiff's injuries in this case. Had he been injured when he was thrown from his seat on the car, it would have been the natural and probable consequence of the train jumping the track, but with no show of reason can it be maintained that having been thrown from the car he would probably and naturally strike his head against these timbers in fleeing from impending danger. No such result could have been anticipated. The proximate cause of the plaintiff's injuries, therefore, was the intermediate and independent act of the defendant in carelessly and negligently permitting the roof of the mine to remain in a dangerous and unsafe condition. As said by our Brother DEAN, in Sturgis v. Kountz, 165 Pa. 365: "The primary is by no means always the natural and probable cause of a particular injury. It is not when there is a sufficient and independent cause between it and the injury. In such case

resort must be had by the sufferer to the originator of the intermediate cause." And in Moulton v. Sanford, 51 Me. 134, Chief Justice APPLETON, speaking for the court, says : " Ordinarily that condition is usually termed the cause whose share in the matter is the most conspicuous and is the most immediately preceding and proximate in the event."

The defendant assigns as another reason why the plaintiff cannot recover that he was guilty of negligence in remaining in the service of the company after he had discovered the dangerous condition of the roof. Replying to this position of the defendant the plaintiff says that the defective condition of the timbers did not threaten immediate injury, and that he continued in the employment of the company because its superintendent directed him to go on with his work and promised him that he would have the timber examined and if there was anything wrong he would have it fixed. The testimony on this branch of the defense was submitted to the jury with proper instructions by the court below. The verdict establishes the fact that the condition of the timber was not such as to make the danger imminent and further that the plaintiff continued his work on the assurance of the superintendent that if the timbers were unsafe they would be removed and the place made secure. This finding relieves the plaintiff from the charge of contributory negligence. When a servant remains in the service of his master after he has knowledge of the dangerous condition of the place in which he is engaged, he is presumed to assume the risk of the danger; but this presumption is rebutted if the master promises to repair the defect and the danger is not so obvious or imminent that negligence can fairly be imputed to the servant for exposing himself to it: Patterson v. Pittsburg & Connellsville R. R. Co., 76 Pa. 389; Wood on Master and Servant (2d ed.), sec. 380.

The defendant's point, the subject of the second assignment of error, was properly refused. Under the testimony submitted the case was unquestionably for the jury. We discover no reversible error and therefore the judgment is affirmed.