# Stirling, Appellant, *v.* Merchant & Evans Company.

*Negligence—Master and servant—Dangerous appliances—Evidence.*

In an action by an engineer and fireman of a factory against his employer, no recovery can be had by the plaintiff where it appears that the plaintiff was in the habit of removing ashes through an opening in the wall, that in doing so he stepped upon two boxes, one superimposed upon the other placed there by his predecessor, that the top box was not fastened to the lower box, and sometimes moved sideways, that plaintiff had complained to the superintendent who had promised to make steps, but failed to do so, that at the time of the accident plaintiff stepped upon the upper box and fell, receiving the injuries complained of, that it was no part of plaintiff's duty to use the opening in the wall for the removal of ashes, and that there was another way which he could have used with practically no loss of time.

Argued Dec. 15, 1908. Appeal, 166, Oct. T., 1908, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1906, No. 923, for defendant non obstante veredicto in case of Archibald Stirling v. Merchant & Evans Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $500. The court subsequently entered judgment for defendant non obstante veredicto.

*Error assigned* was the judgment of the court.

*Augustus T. Ashton,* with him *Victor Frey,* for appellant.— The defendant's acquiescence in the use of this appliance, i. e., the boxes, puts the defendant in the same position as if the appliance had originally been furnished for that purpose.

The use of this way did not as a matter of law make the plaintiff guilty of contributory negligence; it was a question for the jury whether there were other ways known to the plaintiff and whether those other ways were safer.

The plaintiff cannot be charged with having assumed the danger of using the boxes.

This conflict of testimony could only be decided by the jury, and their verdict is conclusive that the promise was given and relied on: Webster v. Coal & Coke Co., 201 Pa. 278; Brownfield v. Hughes, 128 Pa. 194; Patterson v. R. R. Co., 76 Pa. 389.

The imminency of the risk was for the jury, and their verdict establishes that the risk of injury was not imminent: Patterson v. R. R. Co., 76 Pa. 389; Foster v. Steel Co., 216 Pa. 279.

The lower court erred in ruling that the case of Marean v. Railroad Company, 167 Pa. 220, rules the case at bar: Schall v. Cole, 107 Pa. 1; Russell v. Hutchinson, 15 W. N. C. 482; Reese v. Clark, 146 Pa. 465; Brossman v. R. R. Co., 113 Pa. 490; Maines v. Harbison-Walker Co., 213 Pa. 145; Schlitz v. Pabst Brewing Co., 57 Minn. 303 (59 N. W. Repr. 188); Hollis v. Widener, 221 Pa. 72.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellee, cited: Reese v. Clark, 146 Pa. 465; Boyd v. Harris, 176 Pa. 484; Marean v. R. R. Co., 167 Pa. 220.

OPINION BY HENDERSON, J., February 26, 1909:

The plaintiff was employed as engineer and fireman at the defendant's manufactory. He was in charge in the boiler and engine rooms, and among his duties was the removal of ashes. The boiler room was about 8x10 feet in dimensions as estimated by the plaintiff, and 10x14 feet as proved by the defendant. Its floor was from thirty-two to thirty-six inches below the level of the ground. Opposite the boiler was an opening in the wall about five feet high on a level with the surface outside. Through this opening the ashes taken from the ash pit were thrown into a wheelbarrow standing on the outside at the opening and were wheeled to a place about twenty-five or thirty feet away, where they were emptied against the wall of the building. The plaintiff's predecessor at the works had placed two boxes, one on the top of the other, against the wall in the engine room below this opening. The lower box was about sixteen inches in length, about a foot wide and about sixteen inches in height,

filled with brick. The upper box was about ten or twelve inches long, about twelve inches wide and ten inches high. It had neither sides nor bottom, and was set loosely on the lower box. This arrangement the plaintiff found when he entered the defendant's service. He used the boxes in going out of the opening to wheel away the barrow of ashes, as had the engineer done who preceded him. About six or seven months after the plaintiff commenced to work, in returning to the boiler room after having unloaded a barrow of ashes, he stepped backwards from the surface through the opening onto the upper box and fell, receiving the injury of which he complains. His testimony is somewhat contradictory as to the manner in which the accident occurred. In his examination in chief he gave this explanation: "In making the step I went to put my foot over like this, on the iron plate and to get out of the road of the handles of the barrow I had to turn this way and the top box turned on me and turned a complete somersault, my heels went up and I went down." On cross-examination he testified that the top box "moved sideways" at times because of the jarring of the building by railroad trains passing near by, and with reference thereto he was asked whether the danger was that the box might be jarred sideways along the top of the other box and get to the edge of that box, to which he answered "Yes." He was then asked:

"Q. That is the thing you think caused the fall when you did fall? A. I cannot say what caused the fall. I went down so sudden and I saw so many stars when I got down that I do not know what made me fall. Q. Why didn't you feel with your foot to see if it was in the center? A. I looked down to see if the box was there and I had my foot on it. It might be a little over the edge, but not much over. If it was half over it would not stay on it."

The plaintiff's case was founded on the allegation, however, that the injury resulted from the insecure condition of the upper box. He testified that he called the attention of the defendant's superintendent to this insecurity and that the latter promised to send a carpenter to make steps, which promise was not performed; that his attention was again called to the boxes

with a similar failure of performance and that the last promise to provide steps was a week or ten days before the accident. It is claimed that the defendant was responsible for the injury, notwithstanding the plaintiff's knowledge of the insecure condition of the box, because of the promise of the superintendent to make the change, and that the case is within the principle of Patterson v. Pittsburg and Connellsville R. R. Co., 76 Pa. 389; Webster v. Coal & Coke Co., 201 Pa. 278, and other cases which hold that while an employee who remains in the service of his employer with a knowledge of the dangerous condition is presumed to assume the risk of the situation, this presumption is rebutted if the employer promise to repair the defect and the danger is not so obvious nor imminent that negligence can fairly be imputed to the employee for remaining in a dangerous situation. The difficulty of the application of the rule in this case arises from the fact that it nowhere appears that it was the duty of the employee to use this method of going out of, or coming into, the boiler room when disposing of ashes. The location and dimensions of the window or door through which the ashes were thrown into the wheelbarrow make it evident that this was not intended as a passageway for employees from the boiler room to the yard outside, nor was there any requirement or necessity that it be so used by the engineer. No part of the evidence warrants the conclusion that it was any part of the duty of the plaintiff to use this means of going outside or that he was expected so to do. It clearly appears that there were other ways along which the plaintiff might have gone outside to take the wheelbarrow. One of them was through the pump room. The objection made to that was that, "There is very little space for a man to get through, and it is dark. There is no light unless you turn on the little gas jet, and if you turn that up you would hear from the boss about burning gas." The plaintiff never tried to go that way. The time consumed in so doing would have been less than a minute more than in going through the opening which he used. In the view most favorable to the plaintiff he adopted the most convenient way of going out of the boiler room when handling the ashes and did so with the knowledge of the superintendent. During all of the time of his service

there he knew the box arrangement was unsafe because of the liability of the upper box to be displaced. He did not show that the upper box was in any way necessary to the accomplishment of his work even if he used the opening as a passageway, for the lower box had an elevation of sixteen inches as we have seen. The bottom of the opening was only sixteen inches higher, and no difficulty was proved or suggested which would prevent the plaintiff from dispensing with the upper box and stepping onto the lower one which we may assume from the evidence was perfectly substantial. It was wholly a matter of convenience, therefore, to the employee and not of interest or advantage to the employer that the work be done in the manner adopted. The plaintiff was employed by the week. The time consumed in removing the ashes according to his own showing was very short, and there is not a hint in the evidence that the defendant was benefited in any manner by having the plaintiff discharge this part of his duty in the particular way described by him. Moreover, the arrangement used by the plaintiff was not a part of the appliances or machinery necessary for the discharge of his duty by the plaintiff or appointed by the employer to be used by him, and in this respect the case is distinguished from Hollis v. Widener, 221 Pa. 72; Foster v. Steel Co., 216 Pa. 279; Maines v. Harbison-Walker Co., 213 Pa. 145, and other cases cited by the appellant, in each of which the servant's duty made it necessary that he use the dangerous machinery or occupy the dangerous position in order to perform the duty imposed upon him by his employer. Thus in Foster v. Steel Co., the employee was engaged in work on a trestle along which he was required to go in unloading cars. A footway constructed for that use was not kept in repair, and the employee was injured while using the only practicable means of passing along the trestle. In Patterson v. R. R. Co., 76 Pa. 389, there was a defective construction of a portion of the railroad track. In Hollis v. Widener, the plaintiff was employed in work which made it necessary for him to stand on a platform exposed to the danger of machinery, the allegation of the plaintiff being that there should have been a guard rail on the platform. In the present case there was no duty required which subjected the appellant

to any risk not ordinarily incident to the employment. His injury was received if chargeable to the instability of the box because he preferred to take that risk rather than to take a little more time in the discharge of this part of his duty or to take the box away and step down a few inches further onto the second box. It must have been evident to him, too, that with a nail or two he might have fastened the upper box to the lower so that it would not have been jostled out of place, and as he was in charge of this room and the engine room and the operations there carried on it is not unreasonable to require of him attention to such a trifling improvement.

The court below entered judgment for the defendant non obstante veredicto on the authority of Marean v. N. Y., etc., R. R. Co., 167 Pa. 220, which holds that where one enters an employment knowing that certain appliances were necessary to his safety, but continued in the employment without them, he takes the risk knowing the danger notwithstanding a promise and expectation of amendment. The distinction is there drawn between a defect known to exist at the time of engagement in service and one developed later by decay or other deterioration. We do not deem it necessary to discuss the application to this case of the principle considered, for on the whole evidence we are constrained to conclude that the plaintiff failed to show any neglect of duty on the part of the defendant.

The judgment was, therefore, rightly entered and is affirmed.