## Hollis *v.* Widener, Appellant.

*Negligence—Master and servant—Fellow servant—Steam vessels—
Engineer and oiler—Admiralty.*

1. In the absence of direct authority to represent the owner, the chief engineer of a vessel is the fellow servant of an oiler.

2. An oiler on a steam yacht who is injured by slipping on an alleged defectively guarded platform and who admits that he voluntarily continued to work on the platform after he knew from experience that it was dangerous is not entitled to recover against the owner of the vessel by reason of a promise to "fix" the platform given to him by the engineer.

Argued Jan. 5, 1910.   Appeal, No. 260, Jan. T., 1909, by defendant, from judgment of C. P. No. 5, Phila. Co., June T., 1904, No. 1,306, on verdict for plaintiff in case of Edward G. Hollis v. Peter A. B. Widener.   Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ.   Reversed.

Trespass to recover damages for personal injuries.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $15,000, on which judgment was entered for $10,000, all above that amount having been remitted.   Defendant appealed.

*Error assigned* among others was (7) failure of the court to give binding instructions for the defendant.

*John F. Lewis*, with him *F. C. Adler*, for appellant.— The plaintiff, an oiler, and the engineer, were fellow servants: "The Osceola," 189 U. S. 158 (23 Sup. Ct. Repr. 483); Fallon v. Cornell Steamboat Co., 162 Fed. Repr. 329; McCarron v. Dominion Atlantic Ry. Co., 134 Fed. Repr. 762; Sage v. B. & O. R. R. Co., 219 Pa. 129, and Prevost v. Ice, etc., Co., 185 Pa. 617.

*S. Morris Waln*, with him *John W. Wescott*, for appellee.

OPINION BY MR. JUSTICE BROWN, July 1, 1910:

On the first trial of this case the plaintiff was the only witness examined, and a nonsuit was entered. In holding that the court below had erred in refusing to take it off, we said, through Mr. Justice MESTREZAT: "This is a very close case and the meager facts disclosed on the trial do not take it out of the realm of doubt. There was but one witness produced and examined at the trial, and his examination on either side was quite unsatisfactory in developing the material facts upon which the case should turn. . . . As we understand the plaintiff's case, he alleges that the place he was assigned to perform the work for which he was employed was unsafe by reason of the failure of the defendant to guard and protect him from the machinery which it was his duty to oil, and the necessity for guarding the machinery was brought to the attention of the employer, or a person representing him, who promised to remove the danger by providing the guards necessary to protect the plaintiff while he was engaged at his work. . . . The plaintiff had been engaged at this work long enough to know the dangers, if any, arising from a defective or negligently constructed platform, and it may be that he assumed the risk of those dangers. But he contends that he rebutted the presumption that he assumed such risk by showing that he notified his employer of the dangerous condition of the platform and was assured that the danger would be removed, and that he remained at his work solely by reason of this assurance. He claims that the danger to which he was subjected was not so imminent and immediate as to require him to refuse to continue his work and, therefore, that the promise of his employer to remove the danger justified him in not at once quitting work:" Hollis v. Widener, 221 Pa. 72. On the trial, resulting in the judgment from which we have this appeal, the facts were fully developed and there is no difficulty in intelligently passing upon the right of the unfortunate appellee to recover.

The plaintiff was an oiler on a yacht owned by the defendant. He had been employed in that capacity for about fifteen months at the time he was hurt and had served two watches daily of four hours each. His duty required him to oil the engine of the ice machine at least eight times during each watch when the yacht was in commission. In oiling the engine he was compelled to stand on an iron platform, and, on July 23, 1902, while attempting to step on it, his right foot slipped and was caught between the spokes of the driving wheel. His leg was so seriously injured that it was necessary to amputate it about four inches below the knee.

There is much force in the contention of counsel for the appellant that a verdict ought to have been directed in his favor because, from the facts, as fully developed on the second trial, no negligence on his part appeared. The yacht had been built by a most reputable company, under the inspection of the United States government and British Lloyds. When completed it was given the highest class possible for any vessel afloat: "Star 100 A–1," and a license was issued to it in accordance with the laws of the United States. The inspection to which it was subjected was not merely of the plans, but of all the materials before and after they went into its construction. The owner had not interfered either with the plans of the ship or its construction nor insisted on any special devices in connection with it. Its entire design and construction had been intrusted to a competent shipbuilder. In addition to this undisputed state of facts, the testimony of a dozen witnesses, including government inspectors and designing and constructing engineers, concurred that the platform of the ice machine and its approach were constructed in the usual way, of usual and proper material, supplied with a proper and efficient step, with proper rails and guards, and was in all respects safe for the use of the oilers. But, turning to the case of the plaintiff, as made out by himself on the second trial, when all the facts were fully developed, is he entitled to

recover, and ought the case to have gone to the jury on what we said of it on the first appeal?

About a week before the plaintiff was injured his foot had slipped while he was attempting to step on the platform, and he made complaint of what he regarded as its unsafe condition to the engineer in charge of the engines, who was his brother. He had been oiling the ice machine engine from it for about fifteen months before this occurred and knew there was no guard in front of the driving wheel, but his contention is that, after his foot slipped the first time, he continued to incur the risk of being hurt, because his employer, after having been notified of the dangerous condition of the platform, had promised him that it would be made safe. His ground of complaint, as set forth in his statement of his cause of action and as testified to by himself on the trial, is the failure of his employer to keep this promise. The averment in the statement is, "The defendant promised and agreed to have the said platform made safe and properly guarded, but neglected to do the same," and the testimony of the plaintiff in support of this averment is as follows: "Q. Bring your mind now to the time when you came near getting caught or hurt—you made some complaint to your brother, you say—what did you say to him? What did you say to your brother? A. I said, 'Mr. Hollis, I slipped in there the other day, yesterday,' I said, 'Can't there be a guard or fender or some precaution put there for us oilers?' Mr. Hollis said, 'Yes,' he said, 'Ed,' or 'Hollis, that's one thing I'm going to do the first chance I have.' He said. 'You go on with your work and be careful with it until I fix that.' Q. Did you go on with your work, relying on this statement? A. I went on with my work, as usual. Q. Why? A. Under the promise of my master that he was going to put guards and a fender there."

The engineer, though the brother of the plaintiff, was not called as a witness, and there was no competent proof submitted by the plaintiff as to just what his authority

was. The defendant's uncontradicted testimony was that he had no authority to make any structural or other changes in the boat without his consent or that of the master in charge of it, and that no one except the captain had power to do anything or to give any orders.

When we held on the first appeal that this case was for the jury, we were of opinion, formed from "the meager facts" as disclosed by the testimony of the plaintiff alone, that the defendant, or some one acting for and representing him, upon being notified of the dangerous condition of the platform, had promised the plaintiff that it would be guarded, and that, relying upon that promise, he was justified in not at once quitting work; but under the facts as they now appear, it is clear that the plaintiff never called the attention of his employer to the unguarded condition of the platform and that no promise by the latter was ever made to have it guarded. What the plaintiff did was to call the attention of the engineer to the condition of the platform, and he promised to have it fixed. But who was the engineer? If he was not authorized to represent and act for the owner of the boat, no notice to him of the alleged dangerous condition of the platform would be notice to the owner and no promise made by him could bind the owner. The accident occurred on a ship at sea, where, for the safety of all on board, there manifestly must be but one controlling head and but one voice to give orders and issue commands, and the authorities are uniform that all the rest in the service of the owner, except, perhaps, the master, are fellow servants. In England even the master is treated as a fellow servant: Hedley v. Pinkney & Sons Steamship Co., L. R. 1894, App. Cases, 222. In Ireland and Scotland it is held otherwise, and the master is regarded as a vice principal: Ramsay v. Quinn, Irish Rep. 8 C. L. 322; Leddy v. Gibson, 11 Ct. Sess. Cases (3d Ser.), 304. In "The Osceola," 189 U. S. 158, it was held by the supreme court of the United States, upon a full review of the English and American authorities, "that all the members

of the crew, except perhaps the master, are, as between themselves, fellow servants."

The complaint by the plaintiff of the danger of the platform was made to but a fellow servant, and he continued to discharge his duties as an oiler on what he says was a slippery, dangerous place, on the promise of a fellow servant to "fix" it. The negligence of which he complains, as he himself puts it, was the failure of his employer to keep a promise to make safe the place where he was working. He admits that he voluntarily continued to work upon it after he knew from experience that it was dangerous, solely because there was a promise to fix it. This promise, however, was not the promise of his employer. It was but the promise of a fellow servant who had no authority to make it, and, for the failure to keep it, the employer—the owner of the ship—incurred no responsibility.

The seventh assignment of error is sustained and the judgment reversed.