## Naylor *v.* Frick Company, Appellant.

*Negligence—Master and servant—Defective machine—Notice to master—Promise to repair.*

1. Where one of several workmen call the attention of their employer's superintendent to a defect in a machine, and the superintendent promises in the presence of all of the workmen to fix it, the other workmen present have as much right to rely on the promise as the particular workman who called attention to the defect.

2. In such a case where the repair would only have taken fifteen or twenty minutes, and a workman who had relied on the promise is injured by reason of the defect only four hours afterwards, his right to recover damages is not barred by his continuance at work, if he testifies that he believed that the repair had been made, and a possible inference can be drawn from the evidence that by reason of his position in doing his work he could not see whether the repair had been made or not.

*Practice, C. P.—Trial—Jury.*

3. In a personal injuries case a judgment for the plaintiff will not be reversed because at the trial, the judge observed certain employees of the defendant among the jurors, and suggested that they should be excused by consent of counsel, and counsel chose to consent to the withdrawal of the jurors in question.

166 NAYLOR v. FRICK COMPANY, Appellant.

Argued Oct. 22, 1913. Appeal, No. 142, Oct. T., 1913, by defendant, from judgment of C. P. Franklin Co., Sept. T., 1912, No. 202, on verdict for plaintiff in case of Percy L. Naylor v. Frick Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.
The jury returned a verdict for plaintiff for $1,328.40.

On motion for judgment for defendant n. o. v. GILLAN, P. J., filed the following opinion:

The plaintiff, an employee of the defendant, brought an action to recover damages for personal injuries alleged to have been due to the negligence of the defendant in not providing for the plaintiff proper appliances. The jury found for the plaintiff. The defendant having made a request for binding instructions, which was refused, we have now this motion for judgment in his favor. The plaintiff testified that he was an employee of the defendant company as a molder. That on the morning of February 13, 1912, he went to work in the foundry at seven o'clock. That there was immediately delivered to him and several other workmen a flask, the top part being known as a cope; the lower part as a drag. These parts were moved about the shop suspended to the crane by chains. Each part of this flask was of the weight of at least several tons. The cope and the drag were bolted together. The plaintiff and his fellow workmen started to take out the bolts preparatory to shaking out the mould, that is, emptying the flask. On each part of the flask, that is, on the cope as well as on the drag, there are four handles. These handles are bolted to the parts and in the handle is a ring. In these rings are inserted the hooks of the chain when the cope is moved. The only purpose of the handle and the rings is for the purpose of hooking into it the chains by which it is moved. As the plaintiff and

his fellow workmen were preparing to take this flask apart and shake it out preparatory to refilling it Mr. Gilbert, the foreman of the works, appeared and was told by Mr. Senseny, one of the workmen, in the presence and hearing of this plaintiff, that a bolt was broken in one of the handles of the cope to which Mr. Gilbert replied, "All right, shake this cope out by hooking up on the flanges; I will get it fixed." This flask was put in place and the cope was removed by hooking in the flanges. It was removed about fifteen feet from the drag. The workmen then refilled the drag and about four hours after the cope had been lifted from the drag by the flanges they were ready to have it returned. The hooks of the chain were placed in the handles of the cope and the cope placed right over the drag. The plaintiff was putting a pin in the cope which was to extend from the cope to the drag and while doing this, without warning, the cope fell, cut his hand, amputated a finger and did him other injury. The plaintiff placed one of the hooks of the chain into one of the handles or ring but not into the handle which had been broken. When they were hooking up the cope the handle which he knew had been broken was on the opposite side from him but before it fell was reversed so that the handle which gave way and caused the fall was at the time it fell on the side towards this plaintiff. The plaintiff, before hooking up the cope, did not examine to ascertain whether the handle had been repaired or not. This is the testimony of the plaintiff. It is contradicted but, for the purpose of this motion and in consequence of the verdict of the jury, we are to accept it as true and inquire whether or not it gives the plaintiff a prima facie cause of action. If there is a conflict of evidence on a material matter we would not be authorized to direct a verdict for the defendant and, therefore, cannot now enter judgment contrary to the verdict: Dalmas v. Kemble, 215 Pa. 410; Bond v. Railroad Co., 218 Pa. 34.

"It is well settled that it is the duty of an em-

ployer to provide suitable appliances with which his employee, exercising due care for his own protection, can perform his duty without being exposed to unnecessary danger:" McGrath v. Thompson, 231 Pa. 631.

The rings were in the cope for the very purpose for which they were used when the accident occurred. The plaintiff knew four hours before the accident occurred that the handle was broken; according to his testimony the defendant promised to have it repaired. During that four hours the defective or broken appliance was not in possession of the plaintiff nor under his control. Whether it was negligence in him at the end of the four hours to use it without an examination to ascertain whether or not it had been repaired in view of the uncontradicted testimony that it could have been repaired in fifteen minutes is a question of fact to be passed on by the jury and not a question of law to be determined by the court: Brownfield v. Hughes, 128 Pa. 194; Webster v. Coal & Coke Co., 201 Pa. 278.

"There may be and are cases where it is the duty of the court to say as a matter of law that an employee, who in the face of known danger continues in employment is guilty of negligence, even where a promise to repair has been made, but this occurs only when the recklessness of the act clearly evinces a disregard of the common rules of safety which ordinarily govern human conduct. Whether this could be affirmed of the conduct of this plaintiff the jury alone could determine from all the facts in the case:" Glass v. College Hill Borough, 233 Pa. 457.

There was here no fixed standard of duty and it was, therefore, for the jury and not the court to say whether the plaintiff acted as a reasonably prudent man would have acted under the circumstances. It follows that we would not be warranted in entering judgment for the defendant notwithstanding the verdict for the plaintiff. Therefore, now, May 27, 1913, judgment for the defendant is denied and we direct the prothonotary to

enter judgment on the verdict on the payment of the jury fee and we hereby certify the evidence and direct that it be filed so that it become a part of the record.

A motion for a new trial was made on the ground that four jurymen had been withdrawn after the trial judge of his own motion. had made the following statement:

It appearing that this action is an action to recover damages for the alleged negligence of the defendant company, by reason of which one of the employees of that company was injured, and it appearing that four employees of the defendant company have been called into the jury box among the twenty now called, from which the jury is to be selected, the court has said in the presence of the parties, and now repeats, that he is of the opinion that those gentlemen should not be required to sit in the jury, and ought to be relieved by consent of counsel, because it is unfair to the parties and to the jurors; while we recognize the fact that it is not a legal ground for challenge, we are of the opinion that they should be relieved from jury service in this case.    This remark is made in the presence of the parties and in the presence of the jury before the jury is selected.

*Errors assigned* among others were (4) in refusing defendant's motion for judgment n. o. v. and (5) in refusing a new trial because of the withdrawal of the jurors.

*William S. Hoerner*, with him *Omwake & Davison*, for appellant.—There was no case for the jury: N. Y., L. E. & W. R. R. Co. v. Lyons, 119 Pa. 324; Webster v. Coal & Coke Co., 201 Pa. 278; Danisch v. Amer, 214 Pa. 105; Gropp v. Carnegie Steel Co., 4 Pa. Superior Ct. 621; Jones v. Burnham, 217 Pa. 286; Talbot v. Sims, 213 Pa. 1; Marean v. N. Y. S. & W. Railroad, 167 Pa. 220; Higgins v. Fanning, 195 Pa. 599.

*Charles Walter*, with him *J. W. Wetzel*, for appellee, cited: Glass v. College Hill Borough, 233 Pa. 457.

OPINION BY RICE, P. J., February 20, 1914:

The clear and satisfactory opinion filed by the learned trial judge in overruling the defendant's motion for judgment non obstante veredicto contains a succinct and sufficiently comprehensive statement of the facts, and therefore the case need not be restated by us.

The learned counsel for the appellant admit the law to be that, when a servant remains in the service of his master after he has knowledge of the dangerous condition of the place in which he is engaged, he is presumed to assume the risk of the danger; but this presumption is rebutted if the master promises to repair the defect and the danger is not so obvious or imminent that negligence can fairly be imputed to the servant for exposing himself to it: Webster. v. Monongahela River, etc., Coal & Coke Co., 201 Pa. 278. But the counsel contend that the presumption of assumption of risk by the plaintiff was not rebutted in the present case, because, first, the initial complaint of the defect was not made by him; second, the promise to repair the defect was not made to him; and third, he was not directed to continue the use of the defective appliance. This is taking a too narrow view of the evidence. The notice of the defect was given to the defendant's superintendent by a coworker of the plaintiff, in his presence and hearing, and the superintendent's reply, "All right, shake cope out by hooking up on the flanges; I will get it fixed," was evidently addressed to all the employees who were then and there engaged in the particular work. This being so, the plaintiff had as much right to rely on the promise thus made by the superintendent, after the latter's knowledge of the defect, as the particular workman who called attention to it. There is more plausibility in the defendant's second contention, which is, that by the usual, ordinary, and reasonable use of his senses the plaintiff was bound to know that the promised repair had not been made and that danger from the use of the defective appliance was imminent,

and therefore he was guilty of contributory negligence. The difficulty with this proposition, or, at least, one difficulty, is that it involves questions of fact, which it was the province of the jury, not the court, to decide. The fact that four hours elapsed in which to repair the defect, which would take only fifteen or twenty minutes, justified the plaintiff's belief which he testified he entertained, that the repair had been made; at least, the jury could so find. Hence, we are not able to declare, as matter of law, that he was guilty of negligence in not making examination to ascertain whether the repair had been made. Did he know that it had not been made? When the cope was being replaced on the drag the broken bolt in the handle clamp was on the opposite side from the plaintiff, and not then within his direct line of vision. The handle and rings on his side, in which he hooked the chain, were not out of order. But before the cope fell it swung around so that the broken bolt was on his side. It is strongly urged that he must have seen then, if he did not know it before, that the defect had not been repaired. We appreciate the force of this argument, but it is to be noticed that at that instant, according to his testimony, he was engaged in inserting a pin through the flange, holding up the pin with his left hand, and having the nut, which he was about to screw on to it, in his right hand, and before he was through with that the cope fell causing the injury. In view of his description of what he was doing, and the reasons he gave why he did not notice the broken bolt, because of which the handle clamp gave way, it was not the province of the court to declare that he must have seen the defect. He did not testify to an impossible thing, and whether he testified truly was for the jury. The rule of law was thus stated in a recent case: "That a servant may be guilty of contributory negligence in continuing to use a machine which he knows to be in dangerous condition, notwithstanding he has protested against such use, and received the master's promise to

repair, is not to be questioned; but, after all, the test of contributory negligence in such case is whether the danger in using the machine was so imminent that no man of ordinary prudence would assume the risk. Except where the danger is so imminent that a reasonably prudent man would not incur it, "the servant may, in reliance on the promise of the employer to remedy it, remain for a reasonable period in the employment without forfeiting his right to recover for injuries received because of these conditions:" Glass v. College Hill Boro., 233 Pa. 457. This principle was held applicable in a case where the plaintiff continued in employment with full apprehension of the danger, on the assurance that the defects would be repaired. There is much stronger reason for saying that the right to recover damages for the defendant's negligence was not forfeited by the plaintiff's contributory negligence, where he continued to use the machine in the justifiable belief that the promised repair had been made. Very earnest argument is made that the verdict was against the great preponderance of testimony; but this is not so clear as to justify us in holding that the court committed an abuse of discretion in not granting a new trial upon that ground. For the reasons above suggested, taken in connection with the opinion of the learned trial judge, the last five assignments of error are overruled.

With regard to the first assignment, it is to be noticed that the court did not exclude the jurors who were employees of the defendant. He made a suggestion that in his opinion they should be excused by consent of counsel, and thus left it to the counsel to determine whether they would give consent or not. They chose to consent to the withdrawal of the jurors, and it does not appear that they did not have a fair trial before the jurors that were sworn in the case. If consent had not been given, the defendant would be in better position to call in question the remarks of the court. But, having given consent and not having moved to have a

juror withdrawn and the case continued, we think the defendant must be deemed to have preferred to go on to trial notwithstanding the remarks that the court had made.   Under these circumstances, the objection comes too late, after a fair trial and verdict.

The judgment is affirmed.